UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 05-11454 RGS

———————————————————————
                                                    )
JOSEPH H. KORAN, and KIMBERLY KORAN,                )
Individually and on Behalf of ANA KORAN,            )
JOSEPH KORAN, JR. and ERIK KORAN, Minors,)
        Plaintiffs,                                 )
                                                    )
v.                                                  )
                                                    )
ELIZABETH WEAVER and                                )
TOWN OF SHERBORN,                                   )
        Defendants.                                 )
———————————————————————)

## DEFENDANT TOWN OF SHERBORN'S EXPERT DISCLOSURE

Now comes the defendant, Town of Sherborn, pursuant to Fed. R. Civ. P. 26(a)(2) and this court's Scheduling Orders, and hereby discloses the following witness who may used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence:

Michael G. Kennedy, MD
6 Union St.
Natick, MA 01760

Dr. Kennedy is a licensed medical doctor in three states, including Massachusetts, and is a Board Certified Orthopaedic Surgeon. His education, training, licensing, experience, memberships, publications, presentations conducted and seminars attended are all outlined in the attached Curriculum Vitae (attached as Exhibit 1).

Dr. Kennedy was retained by the Town of Sherborn to review pertinent medical records (List of Documents Submitted for Review attached as Exhibit 2), and provide certain opinions as to the nature, cause and extent of any low back pain and related symptoms described by the plaintiff. Dr. Kennedy's Dr. Kennedy has been and will be compensated $390.00 per hour for his expert services in this case.

1

Dr. Kennedy has been accepted as an expert on such matters in U.S. District and State courts throughout the Commonwealth of Massachusetts (list of cases attached as Exhibit 3). Dr. Kennedy will provide testimony and other evidence concerning the cause, nature and extent of the plaintiff's low back condition and associated symptoms, and other matters as more fully set forth in the accompanying reports (attached as Exhibit 4) pursuant to Fed. R. Civ. P. 26(a)(2)(B).

The defendant reserves the right to supplement this disclosure as further information is obtained through discovery and otherwise.

The Defendant,
TOWN OF SHERBORN,
By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

Michael D. Leedberg, BBO# 660832
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon each attorney of record, or pro se litigant, by mail/by hand.

10 20 06
Date

2

# EXHIBIT 1

CURRICULUM VITAE

| | | |
|---|---|---|
| NAME: | KENNEDY, Michael Gerald | |
| DATE & PLACE OF BIRTH: | April 14, 1950 Almonte, Ontario, Canada | |
| CITIZEN STATUS: | American Citizen | |
| LANGUAGE SPOKEN: | English | |
| DEGREES: | B.A. | Queen's, University Faculty of Arts & Science Kingston, Ontario, Canada |
| | M.D. | Queen's University Faculty of Medicine Kingston, Ontario, Canada |
| | F.R.C.S. (C) | Fellow of the Royal College of Surgeons of Canada (Orthopedic Surgery) |
| LICENSES: | L.M.C.C. | Licentiate of Medical Council of Canada |
| | M.D. | General License of the College of Physicians and Surgeons of Ontario |
| | F.R.C.S. (C) | Orthopaedic Surgery Specialist License Of the Royal College of Surgeons of Canada |
| | BOARD CERT. | Board Certification in Orthopaedic Surgery |
| | M.D. | Massachusetts Medical License Vermont Medical License Maine Medical License |

EDUCATION:

| | |
|---|---|
| 1963-1968 | Almonte High School Five Year Arts & Science Programme Almonte, Ontario, Canada |
| 1968-1970 | Bachelor of Arts Degree – Chemistry Major Queen's University Kingston, Ontario, Canada |
| 1970-1974 | Doctor of Medicine Degree Queen's University Kingston, Ontario, Canada |

-2-

APPOINTMENTS:

1974-1975                          Rotating Internship
                                   University of Ottawa
                                   Ottawa Civic Hospital
                                   Ottawa, Ontario, Canada

1975-1976                          1st Year Orthopaedic Surgery
                                       General Surgery Rotation – 3 months
                                       Neurosurgery Rotation – 3 months
                                       Cardiothoracic Surgery Rotation – 3 months
                                       Plastic Surgery Rotation – 3 months

1976-1977                          2nd Year Orthopaedic Surgery
                                       Including 3 months rotation of
                                       Orthopaedic Pathology

1977-1978                          3rd Year Orthopaedic Surgery
                                       including 3 months rotation as
                                       Registrar in Orthopaedic Surgery
                                       University Hospital of the West Indies
                                       Kingston, Jamaica, West Indies

                                   2 Months Rotation as Resident Orthopaedic Physician
                                   Crippled Children's Treatment Centre
                                   Toronto, Ontario, Canada

1978-1979                          4th Year Orthopaedic Surgery

1980-Present                       Orthopaedic Surgeon, Natick, Massachusetts

PAPERS & PRESENTATIONS:

    "A Review of Non-Operative Knee Arthroscopies"

    (a)  Presently being published in "Clinical Orthpaedics & Related Ressearch"
         Journal U.S.A. Publications

    (b)  Presented at:

         1)  Canadian Orthopaedic Association Meeting,
             Vancouver, British Columbia – June, 1978

         2)  Canadian Residents Association Meeting
             Halifax, Nova Scotia – May, 1978

         3)  Twelfth Annual American Orthopaedic Association
             Resident's Conference
             Gainesville, Florida – April, 1979

-3-

MEETINGS ATTENDED:

1) Advanced Arthroscopy Update
San Diego, CA., November, 1981

2) Arthroscopic Surgery – A.A.O.S.
Dixville Notch, NH, October, 1982

3) Summer Institute in Orthopedics
Boston, MA, October, 1983

4) Advanced Arthroscopic Surgery
Bal Harbor, FL, January, 1984

5) Arthroscopy Clinic
Boston, MA, November, 1984

6) American Seminar Institute
Surgical Update
Hawaii, January, 1985

7) Annual Orthopedic Society Meeting
Surgical Update
Orlando, FL, November, 1985

8) The Problem Foot & Ankle
B.U. School of Medicine
Boston, MA, January, 1986

9) American Educational Institute
Professional Mal-Practice / Practice Management Seminar
Orlando, FL, November, 1987

10) Mal-Practice & Asset Protection
Boston, MA, June, 1988

11) Texas Tech. University
"Fifth Annual Pain Symposium"
Lubbock, TX, June, 1988

12) American Educational Institute
Professional Mal-Practice / Practice Management Seminar
Orlando, FL, November, 1988

13) American Academy of Orthopedic Surgeons
56th Annual Meeting (Orthopedic Update)
Las Vegas, Nevada, February, 1989

14) Surgi-Tech, Inc.
Hip & Knee Replacement Clinic
Denver, Colorado, March, 1989

- 4 -

MEETINGS ATTENDED:

15) Orco, Inc.
CPT Coding Seminar
Boston, MA, March, 1989

16) U. Mass Medical School
Management of Pain: Acute & Chronic
New Seabury, Cape Cod, MA, June, 1989

17) Russell Rizzo Memorial Symposium
Clinical Management of Pain
Cleveland, Ohio, September, 1989

18) University of South Florida
Medical Risk Management / AIDS Education
Bermuda, November, 1989

19) Meeting Planners, Inc.
Shoulder Laboratory
Richmond, VA, December, 1989

20) American Academy of Orthopedic Surgeons
Medical Mal-Practice / Risk Management & AIDS Update
Lake Tahoe, CA, February, 1990

21) American Academy of Orthopedic Surgeons
Arthroscopic Surgery Update / Coding
New Orleans, LA, February, 1990

22) DePuy
Orthopedic Implant Technology Exam
Park City, Utah, March, 1990

23) Arthroscopy Assoc. of N. America
Arthroscopic Instructional Course
Orlando, FL, April, 1990

24) Coherent - Workshop
Arthroscopic Laser Surgery
New York, NY, August, 1990

25) Metaphor Conference (International Arthroscopy Assoc.)
London Symposium on Arthroscopy
England, October, 1990

26) Medical Education Resources, Inc.
Arrhythmia Interpretation Diagnosis & Management
Montego Bay, Jamaica, February, 1991

-5-

MEETINGS ATTENDED:

27) Chattanooga Unit of the College of Medicine
ID for the Primary Care Physician
Hamilton, Bermuda, April, 1991

28) University of Tennessee (College of Medicine)
Infectious Disease
Hamilton, Bermuda, April, 1991

29) International Arthroscopy Association
Endoscopy in Orthopedic Surgery
Adelaide, Australia, November, 1992

30) American Educational Institute
AIDS, OSHA Medicare & Medical Mal-Practice
Mullet Bay, St. Maarten, January, 1993

31) American Seminar Institute
Sports Medicine
Bermuda, February, 1993

32) American Academy of Orthopedic Surgeons
Annual Orthopedic Meeting
New Orleans, February, 1994

33) American Seminar Institute
AIDS & Risk Management
Palmos DelMar, Puerto Rico, June, 1995

34) American Seminar Institute
Orthopedic Review
Montego Bay, Jamaica, February, 1995

35) American Academy of Orthopedic Surgeons
Annual Orthopedic Meeting
Orlando, FL, February, 1995

36) American Seminar Institute
AIDS & Risk Management Review
Jamaica, February, 1996

37) American Seminar Institute
Orthopedic Review
Orlando, FL, March, 1996

38) American Academy of Orthopedic Surgeons.
Orthopedic Management of Pain
Lumbar Spine: Controversies in Management
Cervical Spine: Neck Pain
Slipped Capital Femoral Epiphysis
San Francisco, CA, February, 1997

-6-

MEETINGS ATTENDED:

39)     Orthopedic Medical Update
        Orlando, FL, March, 1997

40)     American Seminar Institute
        Sports Medicine Review
        San Juan, Puerto Rico, October, 1997

41)     American Seminar Institute
        AIDS & Risk Management Review
        San Juan, Puerto Rico, November, 1997

42)     American Seminar Institute
        Sports Medicine Review
        Aruba, December, 1997

43)     American Seminar Institute
        Family Practice Review
        Jamaica, February, 1998

44)     Orthopedic Medical Update
        Grand Cayman, February, 1998

45)     American Academy of Orthopedic Surgeons
        Orthopedic Annual Meeting
        New Orleans, LA, March, 1998

46)     American Educational Institute
        Medical - Legal Update
        Aruba, January and March, 1999

47)     American Academy of Orthopedic Surgeons
        66th Annual Meeting
        Anaheim, CA, February, 1999

48)     American Seminar Institute
        Orthopedic Review
        Jamaica, February, 1999

49)     American Educational Institute, Inc.
        1999 - 2000 Medical-Dental Legal Update
        Aruba, November, 1999

50)     Metro-West Medical Center
        Continuing Medical Education Program
        Health & Spirituality
        Natick, MA, November, 1999

-7-

MEETINGS ATTENDED:

51) American Seminar Institute
Orthopedic Review
Paris, France, April 2000

52) American Seminar Institute
AIDS/Risk Management / State Requirements
Jamaica, February 2000

53) American Academy of Orthopedic Surgeons
67th Annual Meeting
Orlando, FL., March 2000

54) American Educational Institute Inc.
Medical-Dental-Legal Update
Aruba, November and January 2000

55) American Educational Institute Inc.
Medical-Dental-Legal Update
Aruba, January 2001

56) American Educational Institute Inc.
Medical-Legal Update
Aruba, January 2002

57) American Academy of Orthopedic Surgeons
New Orleans February 2003

A. Complications of Anterior Cruciate
Ligament Reconstruction

B. Cervical Spine - Neck Pain & Radiculopathy

C. Lumbar Disc Degeration - Treatment Option

D. Osteonecrosis of Hip

-8-

**MEMBERSHIPS:**

1975-Present

1. Royal College of Physicians & Surgeons of Canada F.R.C.S. (C)

2. Canadian Medical Association

3. Fellow of American Board of Orthopedic Surgery

4. Massachusetts Medical Society

5. Massachusetts Orthopedic Association

# EXHIBIT 2

## *LIST OF MATERIALS SUBMITTED TO*
## *DR. KENNEDY FOR REVIEW*

| | |
|---|---|
| 1. | Records from Timothy McMullen, MD (1/29/96-4/21/00) |
| 2. | Records from Robert G. Samaan, MD (4/21/00-9/12/02) |
| 3. | Photos of Ambulance Cot |
| 4. | Sherborn Fire Dept. EMS Report  (2/6/03) |
| 5. | Fire & Rescue Incident Report (2/6/03) |
| 6. | MetroWest ER Records (2/6/03) |
| 7. | Medical records review from K. Meloon, RN, MCC (5/20/04) |
| 8. | Records from Felipe Diaz, MD (10/25/02- 6/10/03) |
| 9. | Diagnostic Imaging Reports (2/12/03 & 12/15/04) |
| 10. | Records from CNY PT  (3/7/03-7/16/03) |
| 11. | Records from James Dispenza, MD (7/19/03) |
| 12. | Records from Clyde Satterly, MD (1/30/04-6/1/05) |
| 13. | Records from Robert Tiso, MD and Joseph Catania, MD (8/8/03-1/3/05) |
| 14. | Prescriptions records from CVS Pharmacy (6/13/01-8/13/06), Eckard Pharmacy (9/21/04-2/15/05), Medicine Plus Pharmacy (11/23/05-8/15/06) and Kinney Drugs10/25/02-10/27/05) |
| 15. | Records from Warren Wulff, MD (7/17/03-9/7/04) |
| 16. | Records from Harvey Sauer, MD (10/15/04-8/13/05) |
| 17. | Records from Cameron B. Huckell, MD (10/7/04) |
| 18. | Records from St. Joseph's Hospital (9/12/03-10/27/05) |
| 19. | Records from Jay Gonchigar, MD (11/23/05-7/24/06) |
| 20. | Chart from Frederick Primary Care Associates (12/13/05-6/16/06)(also including 2006 records from Dr. Swami Nathan, Dr. James Amerena, Dr. Majd Hakim and Dr. Mark Coyne) |

# EXHIBIT 3

# MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760

TEL.(508) 655-5115 • FAX (508) 650-9351


DEPOSITIONS:    2002


Boyajian, Daniel  VS:  Todesca Corp.        Suffolk Superior Court        01-07-02
Attorney Joanne Goulka                      Docket #99-0714B
GRIFFIN & GOULKA

Cordero, Joel  VS:  E.G. Jerrett & Son      Suffolk Superior             06-17-02
Attorney Richard Whalen                     Docket #00-0113E
KENNER/ENGELBERG/DADALT/BRATCHER

Sparks, Robert  VS:  Joaquim Teixiera       Suffolk Superior             07-15-02
Attorney George Clancy                      Docket #01-0319B
FULLER/ROSENBERG/PALMER/BELIVEAU

Gagnon, Lance  VS:  Timothy Fahey           Middlesex Superior           08-12-02
Attorney Allan Forbes                       Docket #99-1904
MINTZ/LEVIN/COHN/FERRIS/GLOVSKY/POPEO

Deminie, Denise  VS:  Ron Hill              Suffolk Superior             08-20-02
Attorney Richard Whalen                     Docket #001333G
KENNER/ENGELBERG/DADALT/BRATCHER

MALLON, Richard  VS:  Penske Trucking       Essex Superior Court         10-01-02
Attorney David O'Connor                     Docket #02-969
O'CONNOR & ASSOCIATES

Nestor, Lisa  VS:  Christopher Cahill       Rockingham Superior          12-23-02
Attorney John Fagan                         Docket #01-C-0242
GETMEN/STACEY/TAMOSI/SCHUTHLESS/STEELE

PEZZOTE, Robert  VS:  Tami Nelson, D.C.     Hampden County Court         12-30-02
Attorney Bernard Guekguezian                Docket #99-472
ADLER/COHEN/HARVEY/WAKEMAN/GUEKGUEZIAN

Morales, Mary Ann  VS:  DeMoula's           Framingham District Court    07-30-02
                   Supermarket              Docket #00CI-687
Attorney Neil Cohen
LAW OFFICE OF JEFFREY GLASSMAN

# MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760
————
TEL.(508) 655-5115 • FAX (508) 650-9351

DEPOSITIONS:     2003

| | | |
|---|---|---|
| Gauthier, Helene  VS:  Marriott Corp.<br>Attorney  Helena O'Brien<br>CAMPBELL/CAMPBELL/EDWARDS/CONROY | Middlesex Superior Court<br>Docket #98-4175 | 01-14-03 |
| Doucet, Jeanne  VS:  Arthur Dunham<br>Attorney John Curran<br>GETMAN/STACEY/TAMPOSI/SCHUTHLESS/STEELE | Hillsboro Superior Court<br>Northern District N.H.<br>Docket #02-C-240 | 01-21-03 |
| Chartier, Elizabeth  VS:  Thea Richardson<br>Attorney Conrad Bletzer, Jr.<br>BLETZER & BLETZER | Middlesex Superior<br>Docket #005393 | 01-22-03 |
| Oliveira, Isaura  VS:  Nona Kramer<br>Attorney Susan Oftring<br>HEALY & HEALY | Sufolk Superior<br>Docket #CV1999-06152 | 04-16-03 |
| Gabriel, Noble  VS:  Equitable Life<br>Attorney Joseph Hamilton<br>MIRICK/O'CONNELL | U.S. District Court<br>of Massachusetts<br>Docket #01CV10064EFH | 06-16-03 |
| Winchester, Janet  VS:  Winstead LTD.<br>Attorney Grace Bacon<br>MORRISON/MAHONEY/MILLER | Quincy District Court<br>Docket #100002471 | 06-19-03 |
| Juvelis, Joy  VS:  Carey Thompson<br>Attorney Scott Birrell<br>FAILLE/HIGHAM/BIRRELL/DANIELS | Superior Court<br>Docket #99-0588771-S | 08-26-03 |

# MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760

TEL.(508) 655-5115 • FAX (508) 650-9351

<u>DEPOSITIONS:</u>    2004

| | | |
|---|---|---|
| CARACCIOLO, Anthony VS: Donald Zebruse<br>Attorney Allen Forbes<br>MINTZ/LEVIN/COHN/FERRIS/GLOVSKY/POPEO | Middlesex Superior Court<br>Docket # 02-10CV454 | 01-21-04 |
| PROKOS, Dimitrius VS: Kevin Houghton<br>Attorney James Marano<br>KUSHNER/MARANO/MURPHY | Worcester Superior Court<br>Docket # 98-2190 | 02-12-04 |
| BASSETT, Christopher VS: Verizon N.E. Inc<br>Attorney Allen Forbes<br>MINTZ/LEVIN/COHN/FERRIS/GLOVSKY/POPEO | Suffolk Superior Court<br>Docket # 02-01983 | 04-27-04 |
| SANCHEZ, Jose VS: Paul Page/Joel Boisvert/<br>RPS, Inc.<br>Attorney Kenneth Robbins<br>CAMPBELL/CAMPBELL/EDWARDS/CONROY | Middlesex Superior Court<br>Docket # 01-05150 | 05-03-04 |
| TURNER, Judy VS: Daniel LeTarte<br>Attorney Emmanuel Papanickolas<br>LAW OFFICES | Essex Superior Court<br>Docket #ESCV2000-01146 | 07-07-04 |
| PEGUERO, Carmen VS: Lowes Home Improve-<br>ment Warehouse<br>Attorney Grace Bacon<br>MORRISON MAHONEY LLP | Salem District Court<br>Docket #200236CV000845 | 09-14-04 |
| WALTZ, David VS: Resurgens Orthopaedic<br>Attorney Clay Milling<br>HENRY/SPIEGAL/FRIED/MILLING | State Court Fulton Georgia<br>Docket #03-VS05-6155G | 10-13-04 |
| BRIGGS, Doreen VS: Carney, Jeffrey/<br>Cormier/Craig/Peterson Trust | Middlesex Superior Court<br>Docket #00-2657 | 12-29-04 |

# MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760

TEL.(508) 655-5115 • FAX (508) 650-9351

DEPOSITIONS:         2005

BURACK, Jeanette VS. Alfred Pannesi          Middlesex Superior Court  06-06-05
PIERCE, DAVIS & PERRITANO,LLP                Docket # 2003-00250
Attorney Maureen Pomeroy


LOMBARDI, Joseph VS Lowe's Home Center        United States District Court
Morrison Mahoney, LLP                         Docket # 04-12678-WGY
Attorney Thomas Federico

# MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760

———

TEL.(508) 655-5115 • FAX (508) 650-9351

DEPOSITIONS  2006

```
Esdale, Anthony VS: Bradford Towne        Suffolk Superior Court     05-11-06
Attorney William Fidurko                  Docket #  03-5834
Zizik,Powers,Oconnell,Spaulding & Lamontagne
```

## MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760
—————
TEL.(508) 655-5115 • FAX (508) 650-9351

TRIALS:    2002

| | | |
|---|---|---|
| Williams (John for: Catherine)<br>Attorney J. Yasmin Tayyab<br>ADLER/COHEN/HARVEY/WAKEMAN/GUEKGUEZIAN | Bristol County Superior<br>Docket #98-01088 | 01-17-02 |
| Wojkun, Peter VS: John Wolkonocki<br>Attorney William Chapman<br>MELICK/PORTER/SHEA | Lawrence Superior<br>Docket #9918 RM8 | 02-14-02 |
| Gaffney, John VS: Ramon Parga<br>Attorney Jeffrey Melick (left firm)<br>MELICK/PORTER/SHEA | Essex Superior<br>Docket #96-1275 | 05-03-02 |
| Geller, Alan VS: Ron Hill<br>Attorney Jay Symonds<br>MIRICK/O'CONNELL | Bristol Superior Court<br>Docket #000399 | 08-28-02 |
| March, Marilyn VS: Joe Downey<br>            Chevrolet<br>Attorney Charles Capace<br>KURNOS/CAPACE/MARGOLIN | Norfolk Superior<br>Docket #2001-107 | 09-04-02 |
| Bhatti, Mohammed VS: Thomas Wooters<br>Attorney John Donovan<br>SLOANE & WALSH | Middlesex Superior<br>Docket #2001-02151 | 09-11-02 |
| Gibson, Hasty VS: Newton Yellow Cab<br>Attorney Joseph Abate<br>O'CONNOR & ASSOCIATES | Brockton Superior<br>Docket #98-0518A | 10-02-02 |
| MacDonald, Rosemary VS: David Savery<br>Attorney Mary Mone (left firm)<br>CLARK/BALBONI/GILDEA | Brockton District Court<br>Docket #0059CV0039 | 10-08-02 |
| Gokey, Laurie VS: Judith Tabor<br>Attorney Scott Birrell<br>FAILLE/HIGHAM/BIRRELL/DANIELS | Middletown Superior Court<br>Conneticut | 11-21-02 |

## MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760
—————
TEL.(508) 655-5115 • FAX (508) 650-9351

TRIALS:      2003


Deleconio, Thomas  VS:  Hortense Seybolt      Suffolk Superior Court      01-23 & 24-0:
Attorney James Franchek                       Docket #2000-1284B
FRANCHEK & PORTER                             (Arbitration)

Hamel, Leo  VS:  Malden Mills Ind.            Superior Court             04-17-03
Attorney Richard Whalen                       Docket #99-06117
KENNER/ENGELBERG/DADALT/BRATCHER

Oliveria, Isaura  VS:  Nona Kramer            Suffolk Superior           04-18-03
Attorney Susan Oftring                        Docket #CV1999-06152
Healy & HEALY

Bidgood, Susan  VS:  Dori Rifkin              Middlesex Superior Court   09-09-03
Attorney Richrd Mazzocca                      Docket #MICV2002-02902
FINNERAN-BYRNE-DRECHSLER

Juvelis, Joy  VS:  Carey Thompson             Superior Court-Connecticut  10-10-03
Attorney Scott Birrell                        Docket #99-0588771-S
FAILLE/HIGHAM/BIRRELL/DANIELS

**MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)**

6 UNION STREET
NATICK, MASSACHUSETTS 01760

TEL.(508) 655-5115 • FAX (508) 650-9351

TRIALS:    2004

INFANTILINO, Louise VS: Pawtucket Mutual         (Arbitration)                    02-26-04
Attorney Kevin Holley
GUNNING & LAFAZIA

CAMACHO, Andres/Noel Medina VS:
              Samuel Andres              Middlesex Superior Court       03-01-04
Attorney Ralph Cecere                    Docket # 00 CI-0846
MCNAUGHT/CECERE/MCNAUGHT

DYER, Charles VS: Town of Lunenberg      Worcester Superior Court       04-01-04
Attorney Joseph Hamilton                 Docket # 94-2802
MIRICK/O'CONNELL

GOLDBERG, Jill VS: Li Zeng               Middlesex Superior Court       06-08-04
Attorney Martin Cosgrove                 Docket # 02-4091
COSGROVE/EISENBERG/KILEY                  (Arbitration)

GABRIEL, Noble VS: Equitable Life
              Assurance Society of U.S.  U.S. District Court            05-13-04
Attorney Joseph Hamilton                 Docket # 01CV10064EFH
MIRICK/O'CONNELL

TOOPS, Frances VS: Paul/Pat Campobasso   Middlesex Superior Court       10-06-04
Attorney Frederick Doyle                 Docket #00-0542
BLACK/CETKOVIC/WHITESTONE

PUTALA, Edward VS: Victoria Bar & Grill                                 10-07-04
Attorney Matthew Pifer
PAUL/FRANK/COLLINS                        (Arbitration)

BURCY, Aundria VS: CSX Transportation    Suffolk Superior Court         10-08-04
Attorney Michael Flynn                   Docket #01-5311-A
FLYNN & ASSOCIATES

# MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760

TEL.(508) 655-5115 • FAX (508) 650-9351

TRIALS:   2005

DEMARS, Edward VS. Paul Blomerth, D.C. &                    Hampshire Superior Court   3-11-05
                    Deborah DeBastiani, D.C.                Docket # 01-109
Attorney Bernard Guekguezian
WAKEMAN & GUEKGUEZIAN

SURABIAN, Michael VS. University Of Mass                    Worcester Superior Court   4-14-05
Attorney Kristine Canepa                                   Docket # 02-0476-B
MIRICK/ O'CONNELL

# EXHIBIT 4

## MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760
———
TEL.(508) 655-5115 • FAX (508) 650-9351

September 8, 2006

Attorney Michael Leedberg
Ten Winthrop Square
Boston, Mass. 02110-1257

RE:   Joseph Koran

Dear Attorney Leedberg:

I had the opportunity to review numerous medical records sent concerning Mr. Joseph Koran and I will briefly summarize these documents. At the end of this report I will render the opinion to a reasonable degree of medical certainty based upon those record supplied.

### THE INDIVIDUAL:

At the time of the February 6, 2003 event Mr. Koran was a 41-year-old married individual.  As of 8/1/03 he was 6' in height and weighed 220 lb.

Mr. Koran was working as a sales manager for Schwann's Foods.

### PAST MEDICAL HISTORY:

On 4/21/2000 Mr. Koran made his way to see Dr. Samaan.  Dr. Samaan was Mr. Koran's new family physician as the patient had just moved from Columbus, Ohio to Cincinnati and was claiming that he was very stressed with that move.

On 11/29/2000 Dr. Koran again saw Dr. Samaan and was complaining of low back discomfort, which he had experienced for many years.  As of that time he was doing back exercises to address this situation.

On 12/14/02 Dr. Samaan saw Mr. Koran for a problem the patient was having with erectile dysfunction.  It was suggested that Mr. Koran stop using his Paxil and switch to Wellbutrin (he was on this medication for a problem with anxiety).

RE:  Joseph Koran                                           Page 2.

On 7/22/02 Dr. Samaan made mention that Mr. Koran was problematic with pain in his lower back, which was going into his left hip and down his left leg.

On 8/13/02 Dr. Samaan again saw Mr. Koran and the patient had just experienced a gouty attack, but his had gone away within 24 hours.  It was reported by Dr. Samaan that the patient's complaints of low back discomfort remained.  Additionally Mr. Koran was having problems related to hypogonadism.  The low testosterone level that the patient had was thought to account for a lot of his complaints of fatigue, weakness, arthralgias and erectile dysfunction.  An injection of testosterone was given to the patient.

On 9/12/02 Dr. Samaan again gave Mr. Koran an injection of testosterone for his problems related to the hypogonadism.

On 10/24/02 Mr. Koran saw Dr. Diaz (his new family physician in Cicero, New York).  The patient was diagnosed as having gout and an x-ray taken of the sacroiliac joint was reported as negative.  The reason for the ordering of the x-ray was "gout".  (Dr. Diaz's notes of 10/24/02 amounted to only two lines and not much can be made as regards to this office visit.  However, the patient must have been having trouble with the sacroiliac/low back area or an x-ray of that region would not have been taken).

**THE ACCIDENT:**

On February 6, 2003 Mr. Koran was at the Sherborn Inn when his left foot was run over by a car.  The ambulance was called to the scene and Mr. Koran was put on a stretcher to be taken to the hospital.  That ambulance stretcher did not lock in position and it released to a lower level.  Mr. Koran at the time of the stretcher incident was strapped in.  Mr. Koran was telling the ambulance providers that he was "okay" and did not sustain any injuries.  He was then transferred by the ambulance personnel to the Emergency Room at the Metro West Medical Center.  (See the ambulance report, as well as the incident report from the ambulance providers).

**SUBSEQUENT MEDICAL TREATMENT:**

Mr. Koran was seen that same day of the accident (2/6/03) at the Metro West Medical Center and was complaining to the providers there of only a left foot problem.  The patient was denying any other trauma.  An x-ray was taken of the left foot and this was reported as normal.  A diagnosis of a soft tissue injury of the foot was made and Mr. Koran was discharged from the hospital that same day.

On 2/10/03 Mr. Koran made his way to see Dr. Diaz and was telling that provider about the accident when the ambulance gurney fell approximately 4' to the ground allegedly causing him neck and low back discomfort, which was minimal at first, but over the one to two days following that event, the pain had increased and additionally he was experiencing radiation of discomfort into his left leg.

On physical examination there were only subjective findings.   A diagnosis of a neck strain and a lumbar disc herniation with radiculopathy was made.

On 2/12/03 an MRI was taken of Mr. Koran's cervical spine and there was noted to be a reversal of the normal cervical lordosis with mild disc bulging at the C6-7 level.

On 2/12/03 an MRI was taken of Mr. Koran's lumbosacral region and there was noted to be lumbar spondylosis most marked at the L5-S1 level.   There was marked disc space narrowing at L5-S1 along with degenerative end plate changes and a posterior disc/osteophyte complex on the right side abutting the right S1 nerve root, but not deviating it.

On 3/7/03 Mr. Koran was started on a physical therapy program and continued this through to 7/16/03.   When first seen by the therapist Mr. Koran had complaints as regards to low back discomfort going into both legs "ever since" the ambulance event and symptoms referable to a left foot sprain.   When last seen by the therapist on 7/16/03 Mr. Koran was complaining of low back discomfort going into both of his legs.

On 3/20/30 Dr. Diaz made mention that Mr. Koran's back pain was improved.   Viagra was prescribed to address the patient's symptoms of erectile dysfunction and this problem was said to be secondary to the stress the patient was experiencing with the accident, as well as the multiple medications that he was on for his back problem.

On 3/24/03 Dr. Diaz saw Mr. Koran for a problem with headaches and on physical examination the patient's neck was supple.

On 3/25/03 Dr. Wulff (an orthopedic surgeon) saw Mr. Koran and a note for this visit was dictated on 8/8/03.   Mr. Koran was said to have complaints of low back discomfort and Dr. Wulff diagnosed him as having degenerative disc disease and back pain "triggered by the fall" (2/6/03).   The degenerative disc disease was said to likely pre-exist the February 2003 incident, but was reportedly asymptomatic before 2/6/03 and therefore, all of the symptoms the patient was having were attributable to the ambulance event.

On 3/28/03 Dr. Diaz saw Mr. Koran for a problem with hypertension.   On physical examination the patient's neck was supple.

On 4/8/03 Dr. Diaz next saw Mr. Koran with the patient's complaints of neck and back problems.   On physical examination the neck was supple and Mr. Koran was diagnosed as having a neck and back strain as a result of the ambulance event.   This ambulance incident was called a "work related injury" and it reportedly had resulted in considerable stress to Mr. Koran with resultant decompensation in the control the patient had of his blood pressure.

On 5/6/03 Dr. Diaz again saw Mr. Koran and the patient continued to have neck and back complaints because of the "work related injury".

<u>RE:</u>  Joseph Koran                                         Page 4.

On 6/10/03 Mr. Koran made his way to see Dr. Diaz and a note was written "To whom it may concern" in which the physician stated that Mr. Koran was unable to attend his gym program because of the February 2003 event. This "work related injury" was said to have resulted in neck and back problems that were sustained after being dropped on a stretcher while being lowered into an ambulance. The diagnosis of neck and back pain secondary to the injury was made and a physiotherapy program was suggested.

On 7/17/03 Dr. Wulff again saw Mr. Koran and the patient had complaints of low back discomfort with radiation into both legs. As of that time Mr. Koran was not working. He was denying to Dr. Wulff any problems with sexual dysfunction. A diagnosis of discogenic back syndrome was made and a lumbar injection and discogram was suggested.

On 7/19/03 Dr. Dispenza (an associate of Dr. Diaz) saw Mr. Koran and the patient had complaints of low back pain.

On 8/1/03 Dr. Dispenza made note that Mr. Koran was complaining of low back discomfort, which was not improving. Medication was prescribed for this and the patient was told to see Dr. Wulff.

On 8/8/03 Dr. Catania (a physician at the Pain Center) saw Mr. Koran for problems the patient was reporting as regards to low back discomfort, left foot and right shoulder pain. A diagnosis of lumbar spondylosis without myelopathy was made and it was suggested that Mr. Koran consider using medication and receive a nerve block.

On 8/20/03 Dr. Dispenza wrote a note "To whom it may concern" making mention that Mr. Koran continued to treat with Dr. Wulff for low back discomfort and to the affect that he (Dr. Dispenza) would not be involved further in the treatment of this low back condition.

On 9/12/03 Dr. Tiso (a physician at the Pain Center) saw Mr. Koran and gave the patient a right lumbar transforaminal block at the L5-S1 nerve root region.

On 10/7/03 Dr. Tiso again saw Mr. Koran and the patient continued to have complaints of low back discomfort with radiation into his right leg. This was said to have increased since the nerve block given on 9/13/03. A discogram with CAT scan study was suggested along with the use of medication and a physiotherapy program.

On 10/29/03 Mr. Koran underwent a three level CAT scan with discogram. The L3-4, L4-5 and L5-S1 levels were studied and at the L5-S1 level there was a reproduction of the pain and evidence of obvious degenerative disc disease. It was thought that Mr. Koran might be a candidate for a single level fusion.

RE:  Joseph Koran                                    Page 5.

On 11/14/03 Dr. Tiso made mention that Mr. Koran was complaining of low back discomfort and again the use of medication and a physiotherapy program to address these problems was suggested.

On 11/19/03 Mr. Koran underwent a CAT scan of his lumbosacral region and at the L5-S1 level there was noted to be a contained annular tear and decreased disc space height with significant osteoarthritic changes.

On 12/11/03 Dr. Tiso again saw Mr. Koran and the patient was given a bilateral selective L5-S1 transforaminal block.

On 1/8/04 Dr. Tiso again performed a bilateral selective transforaminal block at the L5-S1 level.

On 1/20/04 Dr. Wulff made mention that Mr. Koran was considering surgery for his low back condition and was weighing the options of a disc replacement vs. a fusion.  As of the time of that office visit Mr. Koran was said not to be working.

On 1/30/04 Dr. Satterly (a new primary care physician) saw Mr. Koran and it was reported that the patient suffered a back (L5-S1 disc) and left foot injury in 2003.  Dr. Satterly told Mr. Koran that he should see the providers at the Pain Management Clinic for his back problems.  As of the time of that office visit Mr. Koran was already on medication for the low back symptoms.

On 3/10/04 Mr. Koran made his way to see Dr. Tiso at the pain center and a bilateral lumbar transforaminal epidural nerve block at the L5-S1 level was given.

On 5/28/04 Dr. Tiso next saw Mr. Koran and it was being reported that after the injection previously given to him Mr. Koran had noted improvement for 1-2 weeks. As of the time of that office visit Mr. Koran was taking Hydrocodone and Percocet.  Dr. Tiso suggested another nerve block and the continued use of medication for the low back symptoms.

On 9/7/04 Dr. Wulff next saw Mr. Koran and the patient was continuing with his complaints of low back discomfort with radiation into both legs.  Again it was noted that the patient was considering surgery and leaning toward a fusion, but as of the time of the visit Mr. Koran was going to continue treating with Dr. Tiso.

On 9/17/04 Dr. Satterly saw Mr. Koran and under "present problems" was listed erectile dysfunction that "may" also be related to the back problem and an L5-S1 disc protrusion.

On 10/14/04 Mr. Koran received at the pain center a bilateral lumbar selective transforaminal nerve block at the L5-S1 region.

On 10/15/04 Dr. Sauer (a urologist) saw Mr. Koran with the patient's complaints of irritation on voiding, urge incontinence, erectile dysfunction and inability to reach a climax and ejaculate.

RE:  Joseph Koran                                Page 6.

The patient was temporarily relating these symptoms to the ambulance accident in February 2003.  Dr. Sauer suggested that Mr. Koran undergo urodynamic studies and a cystoscopy.

On 11/22/04 Dr. Catania (a physician at the pain clinic) saw Mr. Koran, who was reporting a moderate decrease in his low back discomfort with the injections.  Mr. Koran further stated that he was probably going to have surgery on his back in February 2005.  Dr. Catania suggested the patient consider nerve blocks and the use of medication.

On 11/24/04 Dr. Tiso again performed a bilateral selective transforaminal nerve block at the L5-S1 level.

On 12/6/04 Dr. Sauer performed urodynamic studies and these showed mild bladder and lower urinary tract irritability.

On 12/15/04 Mr. Koran underwent an MRI study of his lumbosacral region and this was compared to the MRI of 2/12/03 and the CAT scan of 10/29/03.  The reason for this MRI was said to be low back and right greater than left leg radicular complaints.  At the L5-S1 level there was noted to be degenerative disc disease, which was stable as compared to the prior studies along with a disc/osteophyte complex to the right and encroaching on the right S1 nerve root, but without deviating it.  This disc/osteophyte complex was said to be unchanged as compared to the prior investigations.

On 12/29/04 Dr. Tiso performed another bilateral lumbar transforaminal epidural nerve root block.

On 1/3/05 Dr. Catania made mention Mr. Koran had experienced a 30-40% decrease in his pain with the nerve block.  Mr. Koran was continuing to complain of low back discomfort with radiation into his right leg.  The back surgery was being delayed for at least 9 months because of the possibility that Mr. Koran would have a new job requiring him to travel to Chicago.  Therefore, the continued use of nerve root blocks and additional medication was suggested for the patient's symptoms.

On 4/4/05 Dr. Satterly saw Mr. Koran and the patient was complaining of a stiff neck.

On 4/6/05 Dr. Tiso performed a bilateral selective transforaminal block at the L5-S1 level.

On 6/9/05 Dr. Tiso again saw Mr. Koran and gave the patient a bilateral selective transforaminal block at the L5-S1 region.

On 8/4/05 Dr. Tiso again at the L5-S1 level administered a bilateral selective transforaminal block.

<u>RE:</u>  Joseph Koran                                    Page 7.

On 10/27/05 Dr. Tiso saw Mr. Koran.   A bilateral L5-S1 selective transforaminal block was given.

On 11/2/305 Mr. Koran visited a new pain clinic (The Capital Area Pain Management Association) and there he saw Dr. Gonchigar.  Mr. Koran had complaints as regards to low back discomfort with radiation into his right leg and Kadian was prescribed for this.  Mr. Koran was denying any bowel or bladder incontinence.

On December 13, 2005 Mr. Koran saw Dr. Frederick (a new primary care physician) and was reporting that in February 2003 he had been involved in a motor vehicle accident and when being taken to the hospital the gurney failed to release and he injured his back "severely".

On 12/23/05 Mr. Koran made his way again to the pain clinic with his complaints of low back discomfort radiating into his right leg and the amount of Kadian the patient was taking was increased.

On 1/18/06 the pain clinic providers that saw Mr. Koran for his low back discomfort again increased the dose of Kadian.

On 2/10/06 Mr. Koran was next seen at the pain clinic and he was continued on Kadian and Oxycodone for his complaints.

On 3/3/06 and 3/24/06 Mr. Koran when seen at the pain clinic and on each occasion was administered a lumbar facet medial branch block at the L3-4, L4-5 and L5-S1 levels.

On 3/8/06 Mr. Koran was again seen by Dr. Frederick and was complaining of chronic back pain and problems with erectile dysfunction.

On 4/19/06 the providers at the pain clinic suggested that Mr. Koran have a repeat of his discogram study.

On 4/21/06 Mr. Koran underwent a lumbar discography examination and at the L5-S1 level there was a positive response with reproduction of the patient's symptoms.

On 4/24/06 the providers at the pain clinic, who saw Mr. Koran for his complaints of low back discomfort with radiation into the right leg thought that an IDET procedure should be considered for the patient's complaints.

On 4/28/06 Mr. Koran was seen at the pain clinic and he wished to proceed with the IDET procedure.  For the time being, however, the patient was going to continue the use of his medication.

On May 1, 2006 Mr. Koran made his way to see Dr. Coyne (a urologist) and was stating that he had a problem with his libido, had a history of back pain and was on Morphine for such. The testosterone levels were said to be low and Mr. Koran was referred to an endocrinologist (Dr. Hoyl).

On 5/5/06 Mr. Koran made his way to the pain clinic with complaints of low back pain going into his ankle and the possibility of another steroid injection being given was raised.

On 5/12/06 Mr. Koran was seen at the pain clinic and an epidural steroid injection into the lumbar region was administered.

On 5/12/06 Mr. Koran saw Dr. Hakin (an endocrinologist) and was complaining of problems with erectile dysfunction, his sex drive and back discomfort since the February 2003 accident.

On 5/30/06 Mr. Koran made his way to the pain clinic and was complaining of low back discomfort. Kadian was prescribed.

On 6/14/06 Mr. Koran had an epidural steroid injection given into his lumbar spine area by the pain clinic providers.

On 6/16/06 Dr. Frederick next saw Mr. Koran and there were no significant complaints as regards to the lower back, but the patient was still on Kadian.

On 7/24/06 Mr. Koran was next seen at the pain clinic and was complaining of low back discomfort. Medication, including Kadian was prescribed.

## OPINIONS:

The following are the opinions to a reasonable degree of medical certainty based upon Mr. Koran's medical records.

## THE LUMBOSACRAL SPINE:

The following comments should be made relative to any low back complaints with or without sciatica that Mr. Koran has and as he causally relates these to the 2/6/03 event.

1)      Mr. Koran had a significant history of problems with his lower back over the years before the 2/6/03 accident and was never proven to be asymptomatic with such prior to the ambulance event of February '03. Even as of some 3 ½ months before the February 6, 2003 incident Mr. Koran was undergoing an x-ray of his sacroiliac joints. The findings on the ancillary testing done after the February 6, 2003 event take many years to develop and these could not possibly be temporally related to the February 6, 2003 accident. The following is a summary of the past medical history.

<u>RE</u>:  Joseph Koran                                    Page 9.

On November 29, 2000 Mr. Koran was seen by Dr. Samaan and was telling that provider that he had been having low back pain for 'many years".

On July 22, 2002 Dr. Samaan mentioned that Mr. Koran was complaining of low back discomfort with radiation of pain into his left hip and down his left leg.  This complaint of low back discomfort continued through to 8/13/02 when Mr. Koran was seen by Dr. Samaan.  Then on 10/24/02 Mr. Koran had made his way to another primary care physician (Dr. Diaz) and an x-ray was taken of the patient's sacroiliac joints.  X-rays of the sacroiliac area were reported as normal.  It is, therefore, inferred that Mr. Koran was, even as of 10/24/02 having symptoms about his lower back to necessitate that x-ray of the low back region.

At no time prior to the February 6, 2003 event was Mr. Koran ever said to be asymptomatic as regards to his lumbosacral area and this would not be expected considering the fact the patient was problematic with his lower back for many years.

2)      On 2/6/03 Mr. Koran's foot was run over by a car and while being loaded into the ambulance the stretcher released to a lower position.  Mr. Koran, at the time of this incident was fully strapped in the stretcher and, therefore, could not possibly strain his lower back.  The only mechanism of injury as described was one of a contusion to the low back area and the stretcher obviously was padded.

3)      Mr. Koran did not complain in a timely fashion of problems with his lower back to suggest that anything other than at most, a contusion to the soft tissues of the lumbosacral area occurred at the time of the February 2, 2003 event.  Mr. Koran was denying any injury to his lower back to both the ambulance personnel, and had no complaints as regards such when seen by the medical providers at the Metro West Medical Center that same day.  If one had just aggravated the low back condition such that symptoms would last for many years thereafter, it would be expected that Mr. Koran would have voiced some complaint of new or increased low back discomfort when he saw the medical providers that day on 2/6/03.  It was not until 2/10/03 that Mr. Koran returned to New York State and was complaining to Dr. Diaz of some lower back discomfort radiating into his left leg.  However, such symptoms voiced to Dr. Diaz are not in a timely fashion to causally relate such to the 2/6/03 event as Mr. Koran was never proven to be asymptomatic as regards to his lower back prior to the February '03 incident and by all accounts had been documented to be problematic with his lower back with or without radiculopathy into his left leg from July 2002 through to the end of October 2002.

4)      Mr. Koran has continued to have complaints as regards to his lower back over the years that he causally relates to the 2/6/03 event.  However, it would not be unexpected that Mr. Koran would do anything other than this as he had been problematic with his lower back for many years prior to the February 2003 incident and had never been proven to be asymptomatic before that February 2003 event.  The following is a summary of Mr. Koran's medical course following February 6, 2003.

RE:  Joseph Koran                                          Page 10.

A)   Prior to the first MRI of 2/12/03 Mr. Koran's radiculopathy complaints were
     confined to the left side.  It is only after the MRI study in February 2003 that
     showed a right sided disc/osteophyte complex that the symptoms the patient was
     complaining of shifted to his right lower extremity.

B)   No medical provider has suggested on any consistent basis that Mr. Koran
     suffered any new injury as regards to his lower back at the time of the 2/6/03
     accident.  Dr. Diaz and other providers have suggested at times that Mr. Koran
     had an aggravation of his pre-existing condition causally related to the 2/6/03
     event.

C)   Injections were given into the lower back to address the L5-S1 symptoms (lumbar
     selective transforaminal blocks on 9/12/03, 12/11/03, 1/8/04, 3/10/04, 10/14/04,
     12/29/04, 6/9/05, 8/4/05 and 10/27/05; lumbar facet medial branch blocks at L3-4,
     L4-5 and L5-S1  (3/3/06 and 3/24/06) and epidural steroid injections given into
     the lumbosacral area (5/12/06 and 7/14/06)).

D)   Mr. Koran's reliability as an historian is questioned as Mr. Koran suggests that his
     erectile dysfunction and other urological/endocrine problems are somehow
     temporally related to the ambulance event of February 2003 (see Dr. Sauer's note
     of 10/15/04 when Mr. Koran was suggesting that his erectile dysfunction and
     inability to reach a climax/ejaculation was timely related to the February 2003
     event when in fact Mr. Koran had been problematic with such and as noted by Dr.
     Samaan within the 6 months prior to the February 2003 incident.  Mr. Koran had
     already received injections of Testosterone for his problem with hypogonadism in
     the months preceding the February 2003 event).  This quality as an inaccurate and
     unreliable historian raises into question the causal relationship Mr. Koran draws
     between his back condition and the February '03 event.

5)     Mr. Koran was seen by medical providers in the immediate period of time following and
over the years subsequent to the February 2003 event.  Acutely there was no evidence of any
significant contusion to the low back area, such that the deep bone/disc and nerve structures
would have been affected.  There was not even any evidence of abrasions, bruising, cuts,
lacerations or swelling noted about the lower back when Mr. Koran was seen by any of the
medical providers within the first three months of the February 2003 incident.  It would be
expected that if one had received a blow to the lower back and that the deep skeletal structures
would have been affected with the stretcher having released to a lower position then there would
be at least some soft tissue evidence of a contusion to the low back region.

After the initial 3 months following the February 2003 event there has been no consistent
positive objective findings on examination noted by any medical provider, which could be
causally related to the February 2003 event.

RE:  Joseph Koran                                    Page 11.

6)      Ancillary testing was done in the form MRI's, CAT scans and discography taken of Mr. Koran's lower back following the February 6, 2003 event and all of this testing has failed to reveal any acute problem causally related to the February 2003 incident.

The positive findings noted on these investigations are indicative of wear and tear, which takes many years to develop and, therefore, could not possibly be temporally related to the February 6, 2003 accident and none of Mr. Koran's own medical providers has suggested such.  The significant degenerative changes about the lower back would account for Mr. Koran's complaints of chronic low back problems for many years prior to the February 6, 2003 incident.  The following is a summary of this ancillary testing.

An MRI of the lumbosacral spine taken 2/12/03 showed that at the L5-S1 level there was lumbar spondylosis with marked disc space narrowing, degenerative end plate changes and a disc/osteophyte complex to the right side abutting the right S1 nerve root, but without deviating that structure.

On 10/29/03 a three level CAT scan with discogram showed a positive result at the L5-S1 level with the back pain being reproduced with the injection of the degenerative disc found at that level.

On 11/19/03 a CAT scan of the lumbosacral spine showed that at the L5-S1 level there was tearing of the annulus with decreased disc space height and significant osteoarthritic changes.  An annular tear is expected and normal in a person who has degenerative disc disease at that level.  A degenerate disc loses its water content and just as mud, when it dries out, it leaves "cracks".  The tearing of the annulus as noted in the degenerative disc represents nothing but this "cracking" of the annulus as it dries out..

On 4/21/06 a discography evaluation showed at the L5-S1 level there was a positive response with reproduction of the patient's symptoms.

In summary Mr. Koran had a significant problem with his lower back in the form of degenerative changes mainly at the L5-S1 level prior to the February 6, 2003 accident.  This had been causing him pain for many years and he was never proven to be asymptomatic as regards to his low back area with or without radiculopathy into his legs before the February 2003 incident.  On February 6, 2003 Mr. Koran was involved in an accident where a stretcher released to a lower level.  Mr. Koran did not complain in a timely fashion of any problem with his lower back nor were there ever any consistent positive objective findings to suggest any low back problems resulting form the February '03 incident or on examination, which would support Mr. Koran's suggestion that his lower back with radiculopathy complaints are causally related to the February 2003 event.

In conclusion Mr. Koran was at not disabled with any low back condition related to the February 6, 2003 accident.

RE:  Joseph Koran                                    Page 12.

There was no period of total disability and Mr. Koran is not permanently impaired and/or disabled as regards to his lower back with or without radiculopathy into his lower extremities causally related to the February 2003 incident.

**WORK STATUS:**

The following comments can be made relative to Mr. Koran's work status and the accident of February 6, 2003.

At the time of the February 6, 2003 event Mr. Koran was a 41-year-old individual.  He was working as a sales manager for Schwann's Foods.  Over the immediate years before the February 2003 incident Mr. Koran had moved around and was quite stressed out by some of his moves. On 4/21/2000 Dr. Samaan made mention that Mr. Koran had recently moved from Columbus, Ohio to Cincinnati and was very stressed with the move.  Then on 10/24/02 Mr. Koran was somewhere in the New York state area as he was following up with Dr. Diaz as a new family physician.

On 2/6/03 Mr. Koran was involved in the ambulance event.

As of 7/17/03 (Dr. Wulff's visit) and 1/8/04 (Dr. Tiso's appointment) Mr. Koran was not working, but there is no indication from the medical records that this had anything to do with the back discomfort.

It is the opinion of this evaluator that Mr. Koran was not disabled from work at any time as regards to his low back causally related to the February '03 event.

Sincerely,

Michael G. Kennedy, M.D.

MGK/jmd:

## MICHAEL G. KENNEDY, M.D., P.C., F.R.C.S. (C)

6 UNION STREET
NATICK, MASSACHUSETTS 01760
——————

TEL.(508) 655-5115 • FAX (508) 650-9351


September 23, 2006


Attorney Michael Leedberg
Ten Winthrop Square
Boston, Mass. 02110-1257


<u>RE:</u>   Joseph Koran


Dear Attorney Leedberg:

I had the opportunity to review additional medical records sent on September 14, 2006 concerning Mr. Koran. The following is a summary of these notes. Essentially they have not changed the opinions as rendered in the note to you dated December 8, 2006. If anything, they reinforce the fact that Mr. Koran had a significant prior history of troubles with his lower back before the February 6, 2003 event and raises into question again his reliability as an historian.

## <u>MEDICAL RECORD REVIEW:</u>

On 10/30/98 Mr. Koran was seen by Dr. McMullen (at that time his primary care physician). Mr. Koran was telling that physician that his back was "out", "sore on the right side" and because of this Mr. Koran had difficulty getting out of his car. On physical examination there were right-sided paralumbar findings and a diagnosis of low back pain was made. Flexeril and Daypro were prescribed.

On August 17, 2006 Mr. Koran made his way to see Dr. Huckell (an orthopedic surgeon). Mr. Koran was telling that provider that he was a regional sales director and continued to work full time, full duty. Mr. Koran was reporting to Dr. Huckell the incident with the stretcher, which reportedly had occurred on February 6, 2003 when he was strapped in the stretcher and in a semi-sitting position with the stretcher raised to an angle of approximately 45°. Mr. Koran went on to relate that while being taken out of the ambulance the stretcher dropped to the ground and he experienced immediate discomfort about his lower back. Mr. Koran was denying any prior history of injuries to his lower back or any physical therapy or chiropractic treatments for any low back condition before the February 6, 2003 event. Additionally Mr. Koran was telling Dr. Huckell that after the February 6, 2003 event he developed erectile dysfunction, which did not pre-exist that work related injury of February 6, 2003.

RE:    Joseph Koran                                      Page 2.

**OPINIONS:**

The above notes have not changed the opinions rendered to you in the September 8, 2006 report. In particular the reliability of Mr. Koran as an historian is raised when he is denying to Dr. Huckell any prior injury or negating to tell that physician about any prior treatment for his low back before the February 2003 event.  Additionally Mr. Koran is less than forthcoming or reliable when he denies ever having erectile dysfunction prior to the February 6, 2003 event (see Dr. Samaan's notes of 12/14/02 when Mr. Koran was reporting to that physician that he was having a problem with erectile issues).

As for the mechanism of injury it appears that Mr. Koran was relating that the trauma occurred when being taken out of the ambulance rather than being put in that vehicle.

Dr. Huckell's opinions as to the diagnosis of a herniated lumbar disc with radiculitis causally related to the February 6, 2003 event is based in part on false statements given by Mr. Koran to that physician and, therefore, the conclusions arrived at by Dr. Huckell are ill founded.

Sincerely,

Michael G. Kennedy, M.D.

MGK/jmd: