UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 05-11454 RGS

JOSEPH H. KORAN, and KIMBERLY KORAN, )
Individually and on Behalf of ANA KORAN, )
JOSEPH KORAN, JR. and ERIK KORAN, Minors, )
    Plaintiffs, )
v. )
  )
ELIZABETH WEAVER and )
TOWN OF SHERBORN, )
    Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT, TOWN OF SHERBORN'S MOTION FOR SUMMARY JUDGMENT**

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff brought this state-law negligence claim against Sherborn under the Massachusetts Tort Claims Act [hereinafter "MTCA"], alleging bodily injury as a result of the defendant's negligence. Pl.'s Compl. The case is brought in this Court under a claim of diversity of citizenship. Id., p. 1. The plaintiff's wife Kimberly and his children Ana, Joseph, Jr. and/or Erik Koran [hereinafter referred to by first name or collectively as the "consortium plaintiffs"] all bring loss of consortium claims. Id., Counts Four, Eight, Nine & Ten.

This cause of action arises out of an incident that occurred on February 6, 2003 in Natick, Massachusetts. Pl.'s Compl., ¶¶ 8, 11 & 12. On that date, the plaintiff Joseph H. Koran [hereinafter "plaintiff"] called for emergency medical services after a motor vehicle accident with the co-defendant Elizabeth Weaver [hereinafter "Weaver"]. Id., ¶¶ 8-11. The defendant, Town of Sherborn [hereinafter "Sherborn"], dispatched two Sherborn Fire & Rescue Department [hereinafter "SFRD"] Emergency Medical Technicians [hereinafter "EMTs"] Scott Christensen

1

and Dominick Tolson to the scene via ambulance. Id., ¶ 11. The EMT's examined the plaintiff, strapped him into an ambulance cot in the back of their ambulance and transported him to Metro West Medical Center in Natick, Massachusetts for further medical attention. Id. According to all present, while the EMTs were removing the plaintiff from the ambulance at Metro West, the cot malfunctioned, causing it to drop from the height of the ambulance cargo floor to the ground. Ex. 1, pp. 55:6-8, 95-96; Ex. 2, pp. 35-36; Ex. 3, pp. 55-57; Ex. 4. The plaintiff claims injury to his back as a result of this incident. Pl.'s Compl.

The cot onto which the plaintiff was strapped is a 1997 Model 93ES Squadmate Ambulance Cot manufactured by Ferno-Washington. Ex. 6; Ex. 10, ¶ 3. Ferno-Washington's exclusive authorized repair company is Northeast EMS Enterprises, Inc. Ex. 7, p. 8:16-17. It is designed so that when the cot is pulled a certain distance from the ambulance during unloading, a lower sub-frame drops down to meet the ground, and automatically locks into place with the assistance of an auxiliary locking mechanism. Ex. 2, pp. 35-36; Ex. 3, pp. 55-57; Ex. 5, pp. 23-24; Ex. 6, p. 19; Ex. 7, pp. 32-33. The auxiliary lock mechanism has an "auxiliary lock lever" that automatically locks into place when the sub-frame descends, which the operator must manually disengage before the cot can be lowered back down into the "folded" position so that it can be loaded back into the ambulance. Ex. 7, pp. 39-40; Ex. 6, p. 15.

The evidence reveals that the cot's auxiliary locking mechanism failed due to damage to the auxiliary lock lever. Specifically, on February 7, 2003, the day after the incident in question, Deputy Chief John Dowse dismantled and inspected the cot and observed that the auxiliary lock lever was somehow bent and not engaging/disengaging properly. Ex. 5, pp. 12-14. This lever extends underneath the mattress and sub-frame of the cot, and only the very tip of the handle is visible from an operator's perspective. Ex. 6, pp. 7, 9 Figure D. After extensive discovery in the

case, absolutely no evidence has surfaced as to how the auxiliary lock lever was bent. Ex. 10, ¶ 7. The defendant denies knowing that the lever was bent at any time prior to Deputy Chief Dowse's inspection on February 7, 2003. Id., ¶ 6. A manufacturer-certified technician replaced the auxiliary lock lever on July 11, 2003, and has testified that a bent auxiliary lock lever would indeed cause the cot to malfunction in the manner described. Ex. 7, pp. 7-9, 16-17, 33-34. The lever was later replaced on July 11, 2003, and the cot has performed and continues to perform flawlessly ever since. Ex. 10, ¶ 8.

In fact, the cot had performed flawlessly from the time of its purchase new by the defendant in 1997 up until the incident of February 6, 2003. Ex. 5, pp. 38-39; Ex. 2, p. 39; Ex. 3, p. 87; Ex. 9, p. 20; Ex. 10, ¶ 3. Chief McPherson personally used the cot during a call on February 5, 2003, **the day before the incident**, and it performed as expected. Ex. 10, ¶ 5. The cot had also been routinely inspected by both the SFRD employees and the state licensing authority, and no problems were ever revealed. Ex. 10, ¶¶ 4, 9-11. Specifically, the cot was inspected weekly or more by SFRD staff, including one documented inspection on February 2, 2003, just four days prior to the incident in question, and no problems were ever noted. Ex. 5, pp. 20-21, 38-39; Ex. 11; Ex. 10, ¶¶ 4, 9 & 10. Similarly, the cot performed flawlessly during mandatory annual testing by the Massachusetts Department of Public Health (hereinafter "DPH") from 1997 through 2002. Ex. 5, p. 39; Ex. 12; Ex. 10, ¶¶ 4, 11.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995) (quoting

3

FED.R.CIV.P. 56(c)). "To succeed [in obtaining summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" Rogers, 902 F.2d at 143 (quoting Anderson, 477 U.S. at 249-50) (citations and footnote omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour, 63 F.3d at 36.

### III. ARGUMENT

#### a. There Was No Notice of a Hazardous Condition With the Ambulance Cot

To sustain a claim of negligence against Sherborn, the plaintiff must show that: 1) Sherborn owed the plaintiffs a duty of reasonable care; 2) that Sherborn breached that duty; 3) that the breach actually and proximately caused incident; and 4) that the plaintiff suffered damages. Coughlin v. Titus & Bean Graphics, Inc., 54 Mass.App.Ct. 633, 638 (2002). Without evidence that Sherborn created the dangerous condition, knew of the dangerous condition or had reason to know of the dangerous condition, no duty of care attaches, and there can be no breach. Oliveri v. Massachusetts Bay Transportation Authority, 363 Mass. 165, 167, 292 N.E.2d 863, 864 (1973).[1]

---

[1] See also, Goraj v. Nowak Funeral Home, slip op., 2006 WL 959473, at *2 (Mass.App.Ct., Apr. 13, 2006)(copy of opinion enclosed as Exhibit 16)(overruling the denial of defendant Nowak's motion for a directed verdict on the

In <u>Oliveri</u>, the court spelled out the rule well with regard to liability for hazardous conditions. The <u>Oliveri</u> court held that without evidence that: 1) the defendant caused the hazard: 2) the defendant actually knew the hazard was there; or 3) the hazard was there for so long that the defendant should have reasonably discovered it, there could be no liability. <u>Id.</u> at 167.

In the case at bar there is no genuine dispute that the cot failed to stand on its own – as it had done flawlessly for six years – due to a damaged part. A manufacturer-certified repair technician deposed by the plaintiff has testified that he replaced a damaged auxiliary lock lever on the cot after the incident, and that this faulty lever would explain why the cot did not perform as expected by the EMTs. The cot has performed flawlessly for almost four years since the lever was replaced. On the undisputed facts, it is clear that the bent auxiliary lock lever was the cause of the cot's failure. Indeed, the plaintiff admits that if the cot was not faulty, the accident would not have occurred. <u>Ex. 1</u>, pp. 95:12-96:2.

There is no evidence to suggest that the Town employees damaged the lever, and in fact, there is no evidence as to how the lever was damaged at all. Without evidence that the defendant *caused* the damage to the cot, the plaintiff must show that the defendant knew or should have known that the cot was defective and dangerous, and failed to warn of or remedy this hazard. <u>Oliveri v. MBTA</u>, 363 Mass. at 167.

The defendant Fire Chief and Deputy Chief Dowse have testified under oath that no one in his department had actual knowledge of the bent auxiliary lock lever until Deputy Chief Dowse inspected the cot the day after the incident. After extensive discovery, and depositions of all seven Town employees with first hand knowledge of the incident, absolutely no evidence to the contrary has been revealed. There simply is no evidence that the defendant had *actual prior*

---

ground that there was no evidence of notice of a defect in a sloped access ramp).

*knowledge* of the damage to the cot.

Furthermore, there is no evidence that Sherborn had *reason to know* about the cot's damaged condition prior to the incident. The uncontroverted evidence not only fails to support that the defendant had good reason to know about the damage – it establishes that the defendant had absolutely no reason to know about the problem. The cot was used by the department without incident for almost six years as of the date of the incident. The cot was inspected thoroughly by the state six times from 1997 through 2002 (the 2003 inspection occurred after-the-fact, in April, 2003), and it passed with flying colors each time. The cot was inspected by the defendant employees regularly, including a documented inspection just four days before the incident. No problem was ever noted in the February 2, 2003 Ambulance Checklist or in dozens of prior checklists. **The Fire Chief personally used the cot the day prior to the incident, and it performed flawlessly.** The auxiliary lock lever was somehow bent in an area underneath the mattress and frame of the cot – **where it was not readily visible to an operator.** In the context of emergency medical services, it would be patently unreasonable to suggest that EMTs faced with an emergency alarm must test their equipment before departing the station. On this record there is simply no disputing that the EMTs simply had no reason to know that the cot was damaged, and had every reason to expect that it would perform as flawlessly as it had during hundreds of prior uses since 1997.

Without evidence of notice of the damaged condition of the cot, actual or constructive, the plaintiffs cannot reasonably be expected to meet their burden on this critical element. All counts arise from the same operative facts, and are based in negligence. Feltch v. General Rental Co., 383 Mass. 603, 607, 421 N.E.2d 67 (1081)(holding that while consortium claims enforce independent rights legal for legal damages, they rely upon the same operative facts as to

6

liability). As such, all claims fail as a matter of law for want of notice, and summary judgment is appropriate.

### b. The Consortium Plaintiffs Have Failed to Present Their Claims

The Massachusetts Tort Claims Act is the exclusive remedy for a negligence claim against a municipality such as the defendant. MASS. GEN. LAWS ch. 258, § 2. The exclusivity provision of the MTCA provides that the MTCA is the exclusive remedy against a public employer for, "injury or loss of property …caused by the negligent or wrongful act or omission of any public employee…. The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter…." Id. The EMTs are Town of Sherborn employees, clearly making the MTCA the plaintiffs' sole remedy. Ex. 2, p. 6; Ex. 3, p. 7; MASS. GEN. LAWS ch. 258, § 2.

Pursuant to Section 4 of the MTCA, a civil action **shall not** be instituted against a public employer for negligence unless the claimant first presented her claim in writing to the municipality within two years after the cause of action arose. MASS. GEN. LAWS. ch. 258 § 4; Krasnow v. Allen, 29 Mass. App.Ct. 562, 566, 562 N.E.2d 1375 (1990). The presentment requirement is a condition precedent to filing suit under the MTCA. Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 283, 475 N.E.2d 727 (1985). All plaintiffs must make presentment "in strict compliance" with the statute. Gilmore v. Commonwealth, 417 Mass. 718, 721, 632 N.E.2d 838 (1994). The only presentment letter received by the defendant was a letter dated April 30, 2003 from an Attorney Scott Joseph, on behalf of plaintiff Joseph H. Koran. Pls.' Compl. (letter annexed to Complaint as Exhibit A).

When outlining the requirement as to the content of a presentment letter under the MTCA, the Supreme Judicial Court has held that to reach the intended goals of presentment, the

presentment letter should be precise as to the legal basis of the claim, and must not be, "so obscure that educated public officials should find themselves baffled or misled with respect to [a plaintiff's] assertion of a claim." Gilmore v. Commonwealth, 417 Mass. 718, 723, 632 N.E.2d 838 (1994). Any theory of recovery which is pled in a complaint, but which was not previously articulated in a presentment letter, is subject to dismissal. See, Tambolleo v. Town of W. Boylston, 34 Mass. App. Ct. 526, 532-33, 613, N.E.2d 127 (1993), rev. den'd, 416 Mass. 1103, 618 N.E.2d 1364 (1993).

In the Commonwealth, loss of consortium is an independent tort, and not derivative of the underlying tort. Olsen v. Bell Telephone Laboratories, Inc., 388 Mass. 171, 176, 445 N.E.2d 609, 612 (1983). The consortium plaintiffs are therefore enforcing and independent right, and as such, all four were required to present their claims in writing to the defendant on or before February 6, 2005. MASS. GEN. LAWS ch. 258 § 4. As noted above, this was a condition precedent to their lawsuit, Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 283, 475 N.E.2d 727 (1985), and must be strictly complied with. Gilmore v. Commonwealth, 417 Mass. 718, 721, 632 N.E.2d 838 (1994).

When addressing presentment requirements in the context of consortium claims, a Massachusetts Appeals Court held that a mother's general presentment of a lead paint poisoning claim as mother and next friend of her two small children was adequate presentment of her own claims for resultant negligent infliction of emotional distress and loss of consortium, despite her failure to articulate those legal theories. Martin v. Commonwealth, 53 Mass.App.Ct. 526, 760 N.E.2d 313 (2002). However, the wisdom and continued viability of Martin is brought into question by subsequent appellate level case law signaling a trend back towards strict compliance with the presentment requirement of the MTCA. Garcia v. Essex County Sheriff's Dept., 65

Mass. App.Ct. 104, 109-10, 837 N.E.2d 284 (2005). The Garcia Court found Garcia's failure to articulate a specific legal theory in his presentment letter was fatal to his case. Id. at 110.

Martin is factually distinguishable from the undisputed facts in the case at bar in critical aspects. First, in Martin, the presentment letter started by noting that the attorney **represented the mother** for claims involving her childrens' ingestion of lead paint. Id. at 527. The mother was specifically identified as the client of the attorney authoring the letter, and it could therefore be said that the Commonwealth defendant received a presentment letter from the mother. In contrast, the predecessor attorney in the case at hand represented only Joseph H. Koran. Ex. A of Pl.'s Compl. The consortium plaintiffs were not identified as clients; indeed, they were not identified at all. Id. That means that in this case, the defendant has received nothing from the consortium plaintiffs or their representative along the lines of presentment. Having brought independently cognizable claims, their failure to comply with this condition precedent to bringing their claims is fatal to their claims against the Town.

Martin can also fairly be placed on the outer fringe of what is acceptable as to the content of a presentment letter. The Court referred to the presentment letter in Martin, in pertinent part, as not being a "model of particularity." Id. at 530. Holding that it nevertheless sufficed, the Court noted that presentment letter in Martin described the circumstances of the grave injuries to the mother's two small children in painstaking detail, outlining the costly and painful treatment that they had undergone, and detailing how, notwithstanding the treatment, the lead paint poisoning had nevertheless significantly retarded their vocational, social, educational and intellectual development. Id. The letter lacked only the specific legal theories relative to direct claims from the mother. Id. at 530. The factual detail supplied led the Martin Court to conclude that it would "require no leap of faith" that the mother would be distressed under the grave

circumstances, and would have her own claims to assert against the Commonwealth.

In contrast, the consortium plaintiffs in the case at bar were not even identified, beyond a casual and generic reference to a "wife" and "two children" in a paragraph detailing how the plaintiff Joseph Koran's purported back injury has impacted his own personal life. Id. Indeed, Erik Koran was not even conceived when the presentment letter was written, having been born 18 months later. There was no mention of loss of affections, relations or emotional support. The letter was delivered by a representative of Joseph H. Koran, for Joseph H. Koran and written from the perspective of how the alleged injury affected the life of one Joseph H. Koran. It may or may not be that for the purpose of the MTCA a mother's distress and loss of affection can fairly be presumed from the poisoning and resultant permanent mental disability of her children. Martin, 53 Mass.App.Ct. at 530. But to hold that an educated public official reading Joseph H. Koran's presentment letter would be cognizant of consortium claims by unidentified plaintiffs would take the reasoning of Martin too far, and would in effect excuse all consortium plaintiffs from the presentment requirement of the MTCA.

In summary, the defendant received no presentment letter from any of the consortium plaintiffs, and Joseph H. Koran's presentment letter is insufficient to present their claims on the undisputed facts of this case and as a matter of law. As such, summary judgment must be granted in favor of the defendant as to the consortium claims.

### c. Plaintiff Erik Koran Has No Cognizable Claim Because He Was Not Yet Conceived

Massachusetts law limits loss of parental consortium claims to those children who were conceived at the time of the parent's injury. Lareau v. Page, 39 F.3d 384, 390 (1st Cir., 1994)(citing Angelini v. OMD, Corp., 410 Mass 653, 575 N.E.2d 41, 43 (1991)). According to consortium plaintiff Erik Koran's interrogatory replies, he was born on October 20, 2004. Pl.'s

Interrogs., #1. This was more than 20 and one half months, or 613 days, after the incident of February 6, 2003. Common sense dictates that there is no physical possibility that Erik was even conceived as of the date of the incident.[2] Therefore, Erik has no cognizable claim under Massachusetts law.

IV. **CONCLUSION**

On this record there is no genuine dispute of material facts, and the defendant is entitled to judgment as to: 1) all counts, because on the undisputed facts the defendant had no notice of the damaged cot; 2) the consortium counts (Counts Four, Eight, Nine & Ten) because the consortium plaintiffs failed to present their claims in writing as required by law; and 3) Erik Koran's consortium count (Count Ten) because he was not yet conceived at the time of the underlying incident of February 6, 2003. Therefore, the defendant is entitled to judgment as a matter of law.

                                                     The defendant,

                                                     TOWN OF SHERBORN,
                                                     By its attorneys,

                                                     PIERCE, DAVIS & PERRITANO, LLP

                                                     /s/ Michael D. Leedberg
                                                     Michael D. Leedberg, BBO #660832
                                                     Ten Winthrop Square
                                                     Boston, MA 02110
                                                     (617) 350-0950

Dated December 19, 2006

---

[2] The expected human gestation period is 280 days, with a normal range of 259 days (37 weeks) to 287 (41 weeks). *Taber's Cyclopedic* Medical Dictionary, p. 868 (F.A. Davis, 19th Ed.)(copy enclosed as Exhibit 17). To the extent that it may be deemed or raised as an issue, the defendant asks that the court take judicial notice of the common knowledge that there is no physical possibility that Erik was conceived 613 days (Feb. 6, 2003 – Oct. 20, 2004 (2004 was a leap year)) before his birth.

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the above document was served upon the co-defendant Weaver's counsel of record on December 19, 2006 at his address of record via regular mail. Weaver's counsel does not appear to be a registered Pacer user.

_____
Michael D. Leedberg