UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH H. KORAN, and KIMBERLY          )
KORAN, Individually and on Behalf of   )
ANA KORAN, JOSEPH KORAN, JR.           )
and ERIK KORAN, Minors,                )
      Plaintiffs                       )
                                   )          **C. A. No. 05-11454-RGS**
v.                                     )
                                   )
ELIZABETH WEAVER, and                  )
TOWN OF SHERBORN,                      )
      Defendants                       )

# PLAINTIFFS' OPPOSITION TO DEFENDANT TOWN OF SHERBORN'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiffs[1] oppose defendant Town of Sherborn's Motion for Summary Judgment. In support, plaintiffs state that there are material disputed facts which preclude a grant of summary judgment in this action.  Contrary to defendant's contention, plaintiffs do not take the position that the accident which is central to this claim was caused because the defendant's employees were aware of a defect in the stretcher used to carry plaintiff Joseph Koran.  Rather, they contend that its employees negligently dropped him, because of their careless handling of the stretcher.  These questions of fact therefore make summary judgment inappropriate in this case.

## II.  FACTUAL BACKGROUND

Plaintiffs have filed a Complaint against defendant Town of Sherborn ("Town") in which they make the following allegation, in paragraph 12, relating to the conduct of

---

[1]Plaintiff Erik Koran will file a Stipulation of Dismissal pursuant to Fed.R.Civ.P. 41 (a)(1)(ii). Therefore, his claim will not be addressed.

defendant Town's employees, who provided medical treatment and transportation for plaintiff Joseph Koran ("Joseph") after an automobile accident:

> 12.     Outside the hospital, upon removing Joseph Koran from the ambulance on a stretcher, the paramedics accidentally and negligently dropped him approximately four feet on to the ground on his back, causing him severe personal injuries.

In their Presentment Letter, sent pursuant to M.G.L. c. 258, § 4, which is attached as Exhibit A to the Complaint, plaintiffs state: "While removing Mr. Koran from the ambulance, *the stretcher was dropped and it slammed to the ground*." [Emphasis added]

The gist of Joseph's claim is that defendant Town's employees negligently dropped him to the ground when they took him out of the ambulance.  He does not claim that the stretcher was defective:

> 12  Q.  Did it seem like there was anything wrong with the
> 13      cot to you at that point?
> 14  A.  I had never been on it, so I couldn't judge if there
> 15      was anything right or wrong.  I had never been on a
> 16      cot in that situation.
> 17  Q.  But did you perceive anything that might have given
> 18      you an indication that there was something wrong
> 19      with the cot?
> 20  A.  Not at all.

> *Joseph Koran Dep., p. 52.*

Scott Christensen, one of the two Town employees who transported Joseph, stated that he did not know why the fall occurred:

> 18    Q   Okay.  What happened next?
> 19    A   As I pulled it away, the stretcher
> 20        collapsed, not really collapsed, but it came down.
> 21    Q   Okay.  And any idea why that happened?
> 22    A   No idea.

> *Christensen Dep., p. 57.*

The other Town employee, Dominick Tolson, had no concerns after the accident, about the operability of the stretcher:

6     Q   Okay.  Did you examine the stretcher at
7  all after it was back in the ambulance?
8     A   I don't remember if we did or not.  I
9  don't remember offhand.
10    Q   Okay.  When you get back to the station,
11  do you remember whether or not you examined the
12  stretcher?
13    A   I don't remember, no, whether or not we
14  did.
15    Q   Did you have a concern about whether or
16  not the stretcher was going to operate properly
17  after that?
18    A   Did I?  No.
19    Q   Well, if you -- say you had another call
20  that evening, you would have had to use that
21  stretcher; is that right?
22    A   Yes, that's correct.
23    Q   Okay.  So were you concerned that it
24  might drop again?
                                    47
1     A   No, no, I don't -- I don't recall having
2  a concern about that.
3     Q   Okay.  Do you remember talking to anyone
4  when you got back about what had happened?
5     A   What do you mean about what happened,
6  about the call with the stretcher?
7     Q   Yeah, with the stretcher, yeah.
8     A   No, I don't think we -- no, I don't
9  remember saying -- talking to anybody about that.

*Tolson Dep., p. 46 - 47.*

Paul Bonang is an outside technician who worked on the stretcher after the

accident.  He was unable to say whether or not a locking lever had malfunctioned.

21   Q.  I believe you testified earlier that you
22  couldn't particularly recall why you replaced the
23  auxiliary lock lever on this cot, correct?
24    A.  That's correct.
                                    55
1     Q.  So you don't recall if it was bent, right?
2     A.  No, I do not.  The only thing I can say is
3  that, like I said, I wouldn't have replaced it if
4  there was nothing wrong with it.
5     Q.  Hypothetically speaking, if they said that
6  this thing had folded to the ground for an unknown
7  reason, might you replace it out of caution?
8     A.  Yes.
9     Q.  So that's a situation where there might not
10  necessarily be anything wrong with it?
11    A.  It's possible.  Like I said, this is three
12  and a half years ago.

3

13   Q.   Sure.
14   A.   It's speculation.
15   Q.   Would that explain maybe why you marked it
16   good before and after your service?
17   A.   It's possible.  If I remember correctly,
18   they said they bent it and tried to straighten it
19   out, and when I looked at it, and I'm just
20   speculating, but I'm pretty sure this is the place
21   where I was at, and the guy that was on site said
22   they had bent it and straightened it out, and when I
23   looked at it, it seemed to be normal, but I replaced
24   it anyway.

                                    56
1    Q.   Did this individual say when it was bent?
2    A.   No.
3    Q.   And he didn't say when he straightened it
4    out?
5    A.   No.

*Bonang Dep., p.  54 - 56.*

But he did offer an alternate explanation of how the accident may have happened:

2   Q.   But coming out, the wheels dropping
3   automatically pulls the auxiliary lock into the
4   locked position?
5    A.   That's correct.
6    Q.   If it's functioning correctly, then it
7   can't drop, because the auxiliary lock is in place?
8    A.   That's correct.
9    Q.   But if it's not locked for some reason or
10   if it's bent and doesn't lock, that's the way in
11   which they could drop down to the lowest level?
12    A.   If the foot end handle is squeezed, yes.
13    Q.   Okay.  *So in order for the stretcher to*
14   *drop*, two things have to happen, the auxiliary lock
15   must be unlocked or locked in its proper location
16   and *someone must squeeze the foot end handle*?
17    A.   *That's correct*.

*Bonang Dep., p.  40 .* [Emphasis added]

He also offered an explanation of how the auxiliary lock could become bent:

8    Q.   Well, let's say, for the sake of argument,
9   that there's some problem with that auxiliary
10   locking device that's bending.  I think you said to
11   me that you replaced more than one of them that was
12   bent; is that correct?
13    A.   That's correct.
14    Q.   Isn't that something that Ferno would need
15   to know about?

                                    4

16   A.   No, because it doesn't happen all the time.
17   To the best of my knowledge, *it's due to abuse of*
18   *the stretcher, something getting jammed in there,*
19   *maybe a restraint or something.*
20   Q.   What do you mean; like a strap?
21   A.   Yes.  That's what they call in here, would
22   be the actual patient restraint.

*Bonang Dep., p.  41 .* [Emphasis added]

18   Q.   You mentioned something about the
19   possibility of the strap getting caught in the
20   lever, correct?
21   A.   Yes.
22   Q.   Is there a strap that goes near this lever?
23   A.   Yes.
24   Q.   What is that strap, what does it do?
                        57
1   A.   That's the chest restraint.
2   Q.   Do you know how many times you replaced
3   bent levers that you suspected the chest restraint
4   played a role?
5   A.   A handful.
6   Q.   What is that?
7   A.   Five or six times.
8   Q.   What made you suspect that?
9   A.   Just in the way it was bent.  I don't
10   automatically assume it was the restraint.  It could
11   be a number of things.
12   Q.   Okay.
13   A.   It could be a number of things that got
14   jammed in there.
15   Q.   What made you suspect the restraint?
16   A.   That's the most common.  That's usually
17   what's in the general vicinity.

*Bonang Dep., p.  56 - 57.*

## III.   ARGUMENT

## A.  STANDARD FOR SUMMARY JUDGMENT

In considering a motion for summary judgment, a court looks for two things: (1) A total absence of genuine dispute as to any material fact; and (2) A resultant rule of law (statutory or decisional) compelling a decision for one or other party. The moving party bears the burden of convincing the court's mind on each point. [Citations omitted]

Smith and Zobel, *Rules Practice*, 8 M.P.S., §56.8, p. 359-360.

It is important to note that there are significant differences in the statement of facts

given by plaintiffs and defendant which make summary judgment inappropriate in this case. If defendant impliedly invites the Court to question the plaintiff's credibility, it may not be considered.  *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).  Instead, the facts must be considered in the light most favorable to the plaintiff, and the Court should not consider the credibility of the evidence, or the weight to be assigned to it.  *Riley v. Presnell*, 409 Mass. 239, 240-241 (1991).  As the Supreme Judicial Court stated recently in *Lindsay v. Romano*, 427 Mass. 771, 773 (1998), summary judgment should not be granted "merely because the facts [offered by the moving party] appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.  *Attorney Gen. v. Bailey*, supra at 370, quoting *Hayden v. First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979)."  In *Noble v. Goodyear Tire & Rubber Co.*, 34 Mass. App. Ct. 397, 402-403 (1993), the Court explained the breadth of this standard:

> The plaintiff's case is not perfect, but a perfect case need not be shown in opposing a motion for summary judgment.  A reasonable measure of doubt may be tolerated because "all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment.". . . ("The duty of a trial judge . . . on a motion for summary judgment `is not to conduct a "trial by affidavits" [or other supporting materials], but to determine whether there is a substantial issue of fact'" [citation omitted]).[fn2]
>
> _____
>
> [fn2] The Supreme Judicial Court has emphasized, as has this court, that "summary judgment is seldom sought or granted in negligence actions."  *Manning v. Nobile*, 411 Mass. 382, 388 (1991), quoting from *Inferrera v. Sudbury*, 31 Mass. App. Ct. 96, 103 (1991).  This is "because the application of the reasonable person standard is uniquely within the competence of the jury."  Moriarty, *The Law of Summary Judgment in Massachusetts*, 43 (Flaschner Jud. Inst. 1990).
>
> As another Court has stated:
>
> The objective of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."

*Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992).  To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial-worthy issue as to some material fact.  See *Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir. 1995).  A fact is "material" if it potentially could affect the suit's outcome.  See *Garside*, 895 F.2d at 48.  An issue concerning such a fact is "genuine" if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor.  See *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), cert. denied, 115 S.Ct. 2247 (1995).

****************************************************************

Rule 56 "contemplates an abecedarian, almost one dimensional, exercise geared to determining whether the nonmovant's most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom are sufficient to create any authentic question of material fact."  *Greenburg*, 835 F.2d at 936.

*Cortes-Irizarry v. Corporacion Insular*, 111 F.3d 184 (1st Cir. 1997).

Perhaps Justice Kass stated best the standard by which such motions must be considered in *Marr Equip. Corp. v. I.T.O. Corp., New England*, 14 Mass. App. Ct. 231, 235 (1982):  "This is at best a toehold . . .  A toehold, however, is enough to survive a motion for summary judgment."

## B.  DEFENDANT HAS MISSTATED PLAINTIFFS' CAUSE OF ACTION

That defendant's employees had a duty to the plaintiff Joseph seems to be clear. A duty can be established in a number of ways.   "[W]e have said that a duty finds its 'source in existing social values and customs'."  *Mullins v. Pine Manor College*, 389 Mass. 47, 51 (1983) (Citations omitted).  "A special relationship between the parties may give rise to a common law duty."  *Lyon v. Morphew*, 424 Mass. 828, 832 (1997).   A special relationship exists where a defendant "reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so."  *Irwin v. Ware*, 392 Mass. 745, 756 (1984). "[M]any cases have established that liability may arise solely from the violation of an affirmative duty to act with reasonable care to prevent harm to another caused by a third person."  *Id.* at 760.  Further,

once a duty is voluntarily assumed, that duty must be performed with due care. Restatement (Second) of Torts § 323 (1965).

Defendant's employees undertook to convey Joseph from the scene of an automobile accident to the hospital. Having done so, they had the duty to perform this task with due diligence. Instead, they carelessly dropped the stretcher. While defendant attempts to engraft onto this simple tort action the obligation to prove that its employees knew the stretcher was defective, there is no such allegation by the plaintiffs. Perhaps this will be seen by a jury as a successful defense. But like all such defenses, it is one which the defendant will have to prove. The best which can be said for that effort, at this moment, is that it is a contested fact.

There are at least two alternate explanations of how this accident happened. One is that the defendant's employees pressed a lever which allowed the stretcher to fall. *Bonang Dep., p. 40.* Another is that since, as defendant contends, the stretcher worked properly on the day before the accident, the employees negligently bent the lever when they placed restraints on plaintiff Joseph. *Bonang Dep., p. 41, 56 -57.* These are all factual issues for the jury to decide. Therefore, sufficient questions of fact exist making summary judgment inappropriate on this issue.

## C. ADEQUACY AND WAIVER OF PRESENTMENT

## 1. ADEQUACY

Defendant alleges that the plaintiffs' presentment notice is defective in that it fails to name, specifically, the plaintiff Joseph's wife and children. The test of adequacy, however, revolves around whether it was a

letter, which specifically identified a legal basis, all theories of liability for which were

8

premised upon the same facts, constituted an adequate presentment. The letter put the executive officer on notice of the time, place, and factual basis of the claims sufficiently to allow the opportunity to investigate, evaluate, settle, and avoid further liability.

*Martin v. Commonwealth*, 53 Mass. App. Ct. 526, 532, 760 N.E.2d 313 (2002).

The presentment letter states that Joseph, as a result of his injuries, "can no longer assist his wife with household duties and has difficulty managing his two small children." "A suit for loss of consortium, while an independent cause of action, is not so rare a bird that in these circumstances the executive officer would be unaware of the likelihood of its assertion." *Martin*, at 531.

The *Martin* case was cited and followed in *Rodriguez v. Cambridge Housing Authority*, 59 Mass. App. Ct. 127, 135 (2003):

In *Martin v. Commonwealth*, 53 Mass. App. Ct. at 530, this court came to a similar conclusion where a mother's emotional distress and loss of consortium claims did not appear in the presentment letter, which detailed her children's negligent lead paint removal claims. In both cases the courts stressed that the facts underlying the claims were fully presented.

*Garcia v. Essex County Sheriff's Department*, 65 Mass. App. Ct. 104, 107, 837 N.E.2d 284 (2005), cites both *Martin* and *Rodriguez* for the principle that strict compliance with the requirements of presentment refers more to whether the proper party was notified in a timely fashion, than to the adequacy of the content.

## 2. WAIVER

Even if the Court deems the presentment notice to be inadequate, which plaintiffs do not concede, the defendant has waived that defense because of non-compliance with Fed.R.Civ.P. 9 (c), which provides:

(c) Conditions Precedent.  In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred.  *A denial of performance or occurrence*

*shall be made specifically and with particularity.* [Emphasis added]

Plaintiffs' Complaint, in paragraphs 22 through 24, along with the relevant portions of defendant's Answer following each such paragraph, state as follows:

> 22.    On April 22, 2003, the plaintiffs, through their attorneys at the time, served a notice and presentment letter on Sherborn, pursuant to G.L. c. 258, et seq.  A true and accurate copy of such letter is attached and hereto as Exhibit A.
>
> ANSWER:  As to the allegations contained in Paragraph 22, the defendant, Town of Sherborn, admits only that the Sherborn Town Clerk received a letter from Scott A. Joseph on behalf of the plaintiff, but neither admits nor denies the contents of the letter as it is a written document which speaks for itself.  The defendant denies that this letter complied with the presentment requirements for submission of a claim based upon a negligence under M.G.L. c. 258, § 4 and, therefore, calls upon the plaintiff to prove same.
>
> 23.    Sherborn effectively denied the plaintiffs' claim by failing to deny such claim in writing within six months after the date upon which the claims were presented, per G.L. 258, § 4.
>
> ANSWER:  The defendant, Town of Sherborn admits the allegations in paragraph 23 of the Complaint to the extent it alleges that the plaintiff's claim for money damages was denied. The defendant denies each and every other allegation in paragraph 23 of the Complaint.
>
> 24.    The plaintiffs in all respects have fully complied with all of the conditions precedent to the commencement of this action.
>
> ANSWER:   Denied.

Defendant's Fifteenth Defense, the only affirmative defense which addresses this subject, states:  "The defendant, Town of Sherborn, states that the Plaintiffs have failed to comply with presentment requirements of M.G.L. c. 258 and/or made inadequate presentment of their claim."

In *Martin v. Commonwealth*, 53 Mass. App. Ct. 526, 532-533, 760 N.E.2d 313 (2002), the Court addressed the issue of the proper response to a presentment notice which a defendant believes to be defective:

> Having decided that Ms. Martin's presentment sufficed, we need not consider her additional argument, raised for the first time on appeal,[fn4] that the Commonwealth waived the sufficiency of her presentment by failing to deny it specifically and with particularity.[fn5]  Because of the importance of the issue generally, we observe that, in asserting answers and affirmative defenses, parties would do well to

10

reacquaint themselves with, and heed the requirements of, the Rules of Civil Procedure. The rules impose upon an attorney an obligation to certify that there is a good ground to support each pleading. The thoughtless, inattentive assertion of multiple boilerplate defenses, available at the push of a button in the computer age, is a phenomenon of increasing frequency that runs counter to this certification and to the spirit and letter of the rules. See Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974).

----------------------------------------------------------

[fn5] We note in passing that as Ms. Martin's complaint did specifically aver proper presentment, more was required of the Commonwealth than the assertion of a general denial and boilerplate affirmative defense. "In order to test the efficacy of an attempted presentment, a plaintiff . . . may aver generally that all statutory conditions precedent to recovery have been met; the defendant must deny the plaintiff's averment `specifically and with particularity' (Mass.R.Civ.P. 9 [c]), or defective presentment is not an issue in the case."  *Vasys v. Metropolitan Dist. Commn.*, 387 Mass. at 52. *G & B Assocs., Inc. v. Springfield*, 39 Mass. App. Ct. 51, 55 (1995).

The defendant has simply not complied with the requirement of Rule 9 (c).  As *Martin*, and the cases cited, point out, unless a governmental party identifies in its Answer the defects in a presentment notice "specifically and with particularity," that defense is deemed to be waived.

## IV.  CONCLUSION

The materials submitted by the defendant, when contrasted with those submitted by plaintiffs, show two very distinct and different views of the factual issues in dispute in this case, which should be properly determined by a jury, and not by the court, as a matter of law.

For all of the reasons set forth in this Opposition, the plaintiffs respectfully request that the defendant's motion be denied.

By their Attorney,


_____
CARMEN L. DURSO, ESQUIRE
B.B.O. # 139340
175 Federal Street, Suite 1425
Boston, MA 02110-2241
617-728-9123
January 31, 2007


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party electronically and by mail, on January 31, 2007.


_____
CARMEN L. DURSO

12