UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11454-RGS

JOSEPH H. KORAN, and KIMBERLY KORAN,
individually and on Behalf of
ANA KORAN, JOSEPH KORAN, JR. and
ERIK KORAN, Minors

v.

ELIZABETH WEAVER and
TOWN OF SHERBORN

MEMORANDUM AND ORDER ON
TOWN OF SHERBORN'S MOTION FOR
SUMMARY JUDGMENT

April 17, 2007

STEARNS, D.J.

Thursday, February 6, 2003, was not an auspicious day for Joseph Koran. His ill-luck began with a motor vehicle accident in Sherborn, Massachusetts. The collision led to an altercation with Elizabeth Weaver, the driver of the other car. As an agitated Weaver drove from the scene, she ran over Koran's foot. Emergency medical technicians (EMTs) from the Sherborn Fire Department were summoned. The EMTs immobilized Koran on a stretcher and took him by ambulance to a local hospital. While removing the stretcher from the ambulance, the EMTs "dropped Koran approximately four feet to the ground," injuring his back.

Two months later, an attorney representing Koran mailed a presentment letter to Sherborn town officials. The letter alleged negligence on the part of the Sherborn EMTs and made a settlement demand of $100,000.00. The Town rejected the demand. On July

8, 2005, Koran, represented by a new attorney, filed this diversity action in the federal district court. In addition to Koran's negligence claim, the Complaint asserts loss of consortium claims on behalf of Koran's wife and two of his children.[1] The Town moves for summary judgment contending that it had no notice of a defect in the stretcher and therefore breached no duty of care to Joseph Koran. The Town also asserts that Koran's wife and children failed to make a proper presentment of their consortium claims as required by the Massachusetts Tort Claims Act (MTCA), G.L. c. 258 § 4.

### THE PRESENTMENT LETTER

The presentment letter read as follows.

Please be advised that this office represents Joseph Koran who suffered serious personal injuries as a result of the negligent acts and omissions of the Sherborn Fire and Rescue Department on or about February 6, 2003. This letter is being sent pursuant to Massachusetts General Laws chapter 258, sec. 2, et. seq.

On or about February 6, 2003, Mr. Koran was involved in a minor motor vehicle accident in the parking lot of the Sherborn Inn, located in Sherborn, Massachusetts. After exchanging insurance information, the other driver became agitated, entered her vehicle, and ran over Mr. Koran's left foot. Mr. Koran called 911 for emergency assistance. Deputy Chief Ron Buckley, along with Paramedics Tolson and Christensen (the "Paramedics") of the Sherborn Fire and Rescue Department subsequently arrived upon the scene in response to Mr. Koran's telephone call.

The paramedics strapped Mr. Koran onto a stretcher in a seated position. He was placed in the ambulance and his foot was iced during the trip to the MetroWest Medical Center in Natick, Massachusetts (the "Hospital"). The Paramedics accompanied Mr. Koran to the Hospital.

Upon arrival at the Hospital, one of the Paramedics stood at the back of the

---

[1] Erik Koran, the third child named as a plaintiff in the caption of the Complaint, was not conceived at the time of the accident. On February 5, 2007, Joseph Koran agreed to dismiss Erik from the case. See Lareau v. Page, 39 F.3d 384, 390 (1st Cir. 1994).

ambulance facing Mr. Koran while holding the stretcher at Mr. Koran's feet. The other Paramedic remained behind Mr. Koran, inside the ambulance. While removing Mr. Koran from the ambulance, the stretcher was dropped and it slammed to the ground. Mr. Koran, who was strapped to the stretcher in a seated position, landed directly on his tailbone. The Paramedics were not able to return the stretcher to an upright position and were forced to wheel Mr. Koran into the Hospital emergency room at floor level.

As a result of the vehicle being driven over his left foot, Mr. Koran suffered soft tissue damage for which he was treated at the Hospital and continues to receive physical therapy.

As a result of the negligent acts and omissions of the Paramedics, Mr. Koran suffered ongoing serious injuries to his back.

On or about February 9, 2003, Mr. Koran began to suffer from severe headaches and back pain. Mr. Koran visited his physician, Dr. Felipe Diaz, on February 10, 2003, who identified two areas of severe pain. Mr. Koran was treated with several injections to alleviate the excruciating pain and to reduce inflammation. On or about February 12, 2003, Mr. Koran had an MRI which revealed a bulging disk in his lower back which is grazing the nerve root causing him constant pain and discomfort. Mr. Koran continues to receive physical therapy upon his back.

Mr. Koran also suffers from excruciating headaches, high blood pressure and is in constant discomfort as a result of the negligent acts and omissions of the Paramedics.

The back injuries suffered by Mr. Koran have drastically affected both his professional and personal life. Mr. Koran is a regional manager of a food service company whose job entails extensive travel. As a result of such injuries, his ability to travel has been seriously curtailed and he has lost earnings. In addition, he can no longer assist his wife with household duties and has difficulty managing his two small children.

The Town of Sherborn, Massachusetts is liable for the damages suffered by Mr. Koran due to the negligent acts and omissions of the Paramedics resulting in the dropping of the stretcher causing injury to his back while removing Mr. Koran from an ambulance on or about February 6,2003. As emergency medical service personnel, the Paramedics owed Mr. Koran the highest degree of care, and their actions clearly breached such duty of care. Accordingly, Mr. Koran hereby demands the payment of $100,000.00 in damages.

DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'[G]enuine' means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Buchanan v. Maine, 469 F.3d 158, 166 (1st Cir. 2006), quoting Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 218-219 (1st Cir. 2004).

The Negligence Claim

It is undisputed that the stretcher's auxiliary locking mechanism malfunctioned because of damage to the lock lever from some unknown cause. The stretcher had been inspected on February 2, 2003, four days before the accident, by fire department personnel and no problems were observed. The stretcher was used by the Fire Chief on February 5, 2003, the day before the accident, and it "functioned flawlessly." The Deputy Fire Chief dismantled and inspected the stretcher on February 7, 2003, the day after the accident. He observed that the auxiliary lock lever was bent and failing to engage. The certified technician who replaced the auxiliary lock lever testified that a bent lever could cause the stretcher to malfunction.

The Town contends that Koran's case fails because there is no evidence that it knew of a defect in the stretcher. "Without evidence that Sherborn created the dangerous condition, know[s] of the dangerous condition or had reason to know of the dangerous

4

condition, no duty of care attaches, and there can be no breach." Town's Memorandum, at 4. See Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 167 (1973). While this is accurate as a statement of law, it fails to address Koran's theory of the case, that his injuries were caused not by a defect in the stretcher, but because the EMTs "negligently dropped him." Plaintiffs' Opposition, at 1. Claims of negligence involve a reasonable person standard that "is uniquely within the competence of the jury." Inferrera v. Town of Sudbury, 31 Mass. App. Ct. 96, 102-103 (1991). Consequently, "[s]ummary judgment is rarely granted on the merits of a negligence action . . . ." Foley v. Matulewicz, 17 Mass. App. Ct. 1004, 1005 (1984). This case is no exception.

The Presentment Letter

The Town argues that Koran's presentment letter failed to give it legally adequate notice of the loss of consortium claims brought by Koran's wife and children. Presentment is a condition precedent to the filing of a claim under the MTCA.[2] See Weaver v. Commonwealth, 387 Mass. 43, 45-46 (1982). The purpose of the presentment requirement is to "ensure[ ] that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." Lodge v. Dist. Atty. for the Suffolk Dist., 21 Mass. App. Ct. 277, 283 (1985). Presentment must be made "in strict compliance with the statute." Weaver, 387 Mass. at 47.

---

[2] The MTCA provides the exclusive remedy in an action against a municipality claiming negligence on the part of its employees.

5

Disputes over the adequacy of a presentment letter usually arise in one of three contexts: (1) whether notice of a claim was timely; (2) whether the claim was presented to the proper official; and (3) whether the presentment adequately identified the nature of the claim and the legal basis on which liability is alleged.  In the first two contexts, strict compliance is the unbending rule.  It is insufficient, for example, to serve a presentment letter on a representative of the executive officer.  See Holahan v. Medford, 394 Mass. 186, 189 (1985) (plaintiff presented his claim to the city solicitor rather than the city manager).  In the third context, however, the rule is applied more flexibly.  "[T]he 'strict compliance' precept is concerned more with whether presentment has been made to the proper executive (*proper party noticed*) in a timely fashion (*timeliness*) than with the content of the presentment (*adequacy of content*)."  Martin v. Commonwealth, 53 Mass. App. Ct. 526, 529 (2002).  The adequacy of content test has been defined as follows.  "[A] presentment letter should be precise in identifying the legal basis of a plaintiff's claim" and must "not [be] so obscure that educated public officials . . . find themselves baffled or misled with respect to [whether] a claim which constitutes a proper subject for suit" is being asserted.  Gilmore v. Commonwealth, 417 Mass. 718, 723 (1994).[3]

The letter presented on behalf of Koran contains no mention of any claims of loss

---

[3]Despite the more liberal rule, the reported cases include numerous examples of presentment letters that have tripped over the "adequacy of content" requirement.  See, e.g., Garcia v. Essex County Sheriff's Dep't, 65 Mass. App. Ct. 104, 109 (2005) (letter submitted on behalf of an inmate injured in a vehicle accident stated no legal basis for liability nor gave a sufficiently detailed description of the underlying facts from which such basis could be inferred); Tambolleo v. Town of West Boylston, 34 Mass. App. Ct. 526, 532-533 (1993) (presentment letter described intentional conduct while the complaint alleged negligence).

of consortium on the part of Koran's wife and his children. However, Koran argues that where a presentment letter "precisely and unequivocally" sets out the facts underlying a claim, the intention of a plaintiff to bring a particular cause of action may be inferred even though it is not identified in so many words within the body of the letter. Martin, 53 Mass. App. Ct. at 530. See Rodriguez v. Cambridge Housing Authority, 59 Mass. App. Ct. 127, 135-136 (2003) (presentment letter describing three successive home invasions was sufficiently detailed to alert a housing authority to a potential claim that a missing key should have precipitated a change in the locks to plaintiffs' apartment door); Gilmore, 417 Mass. at 722 (where the presentment letter provided ample details of the decedent's estate's suit for wrongful death, "a conclusion that the remaining plaintiffs . . . were making a claim for negligent infliction of emotional distress was not a conclusion only those with the most active imaginations could be expected to draw from the facts the plaintiffs recited.").

In Martin, the case on which Koran principally relies, a letter was sent by a mother as parent and next friend of her two children who were poisoned by lead paint. Although the letter did not state that the mother was presenting particularized claims of loss of consortium and emotional distress on her own behalf, "the letter [did not] explicitly limit the claims to those of the children." Id., 53 Mass. App. Ct. at 530. "The letter identifies the mother and the children, states the factual basis for the claims, and invites a reply to discuss settlement. . . . It would take no great leap for the public official receiving the letter to infer that Ms. Martin, who had taken pains to assure herself that the premises were lead-free prior to signing a lease, might have suffered distress in learning that her children were

adversely affected by levels of lead in their blood, or that she too would be impacted by their 'retarded educational, social, vocational, and intellectual development' and would assert claims on her own account." Id. at 530-531.  In short, because the theory of liability of the mother's claims was based upon the same facts as the claims of the children, and because the letter did not expressly limit the claims being asserted to those of the children, the letter satisfied the purpose of the presentment requirement: to give the executive officer the opportunity to investigate, to take preventive measures, and to settle the claim expeditiously.

     Koran's presentment letter is fulsome in its explanation of the facts on which he bases his claim that the EMTs were negligent.  It recites in some detail the complications he suffered as a result of the injury to his back, including "excruciating headaches, high blood pressure and . . . constant discomfort."  It also notes the "drastic effect" that the accident has had on Koran's "professional and personal life," including that "[h]e can no longer assist his wife with household duties and has difficulty managing his two small children."  But Koran's letter differs from the Martin letter in several significant respects.  In Martin, the attorney made clear that the claim was being presented on behalf of the mother as well as her children: "I represent Mrs. Sheila Martin, the mother of two children who were poisoned by the ingestion of lead contained in paint found in their apartment . . . ."  By contrast, Koran's attorney in his letter made no claim to represent anyone apart from Joseph Koran: "Please be advised that this office represents Joseph Koran who suffered serious personal injuries as a result of the negligent acts and omissions of the Sherborn Fire and Rescue Department . . . ."  The letter in Martin referred specifically to

8

the injuries suffered by the children and the measures that their mother had undertaken to insure their safety. While the facts of the Koran letter might give rise to an inference that Koran's wife and children suffered harm as a result of his injuries, the latter are referenced solely in terms of damages that are personal to Koran himself (his inability to assist with household chores and to supervise the children).

The tipping point, however, is the concluding paragraph of the letter. It specifies that the Town "is liable for the damages suffered *by Mr. Koran* due to the negligent acts and omissions of the Paramedics . . . . Accordingly, *Mr. Koran* hereby demands the payment of $100,000.00 in damages." (Emphasis added). Not only is the demand explicitly limited to Koran himself, but the amount of damages sought is the maximum per-plaintiff recovery permitted by section 2 of the MTCA. See Irwin v. Ware, 392 Mass. 745, 766 (1984). Loss of consortium is an independent claim that is not affected by the amount recovered by the plaintiff who suffers the primary injury from the tort. See Eyssi v. City of Lawrence, 416 Mass. 194, 203-204 (1993). If consortium claims were being pressed by members of the Koran family, an experienced town executive would have expected the presentment letter to assert the maximum dollar demand permitted, that is, a per-plaintiff total of $400,000.00. Any lingering doubts that might have been planted in an inquisitive official's mind by the letter's description of Koran's injuries would have been permanently extinguished by the limited $100,000.00 personal demand.

ORDER

For the foregoing reasons, the Town of Sherborn's motion for summary judgment is DENIED as to Koran's negligence claim. The motion is ALLOWED as to the consortium

claims brought on behalf of Koran's wife and children.  Trial will commence Monday, July 9, 2007, at 9:00 a.m. in Courtroom 21.

                                                  SO ORDERED.

                                                  /s/ Richard G. Stearns

                                                _____
                                                UNITED STATES DISTRICT JUDGE